Joseph de LORAINE, Plaintiff-Appellant,

v.

MEBA PENSION TRUST, Representing the National Marine Engineers' Beneficial Association, and Mildred E. Killough, Individually and in her capacity as Administrator of the MEBA Pension Trust, Defendants-Appellees.

No. 973, Docket 74–1096.

United States Court of Appeals, Second Circuit.

Argued May 8, 1974.

Decided June 14, 1974.

E. Judson Jennings, New York City (Legal Services for the Elderly Poor, on the brief), for plaintiff-appellant.

Morton M. Maneker, New York City (Proskauer, Rose, Goetz & Mendelsohn, Robert J. Jossen, New York City, on the brief), for defendants-appellees.

National Senior Citizens Law Center, Robert B. Gillan, Los Angeles, Cal., as amicus curiae.

Before ANDERSON, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Joseph de Loraine, a marine engineer, voluntarily retired from his trade in 1964 after 20 years service. He was then 46 years old. At the time, plaintiff signed a statement which described his retirement as permanent and recognized that any return to employment in the maritime industry without permission of the Trustees would entail forfeiture of his pension rights.[1] Plain-

---

1. The text of the statement was as follows: I, Joseph de Loraine, hereby certify that I have withdrawn and shall remain com- pletely withdrawn during my retirement from any employment aboard any vessel documented under the laws of the United

tiff thereafter received regular pension payments from defendant MEBA Pension Trust. In 1968, during a period of increased demand for marine engineers resulting from the Viet Nam war, the Trustees granted plaintiff and others permission to return to work. In December 1970, citing the cessation of this demand, the Trustees adopted a blanket resolution withdrawing for all the 1968 grant of permission;[2] plaintiff, fearing the loss of his pension, retired once again. After unsuccessfully pursuing state administrative remedies,[3] he sought redress in the United States District Court for the Southern District of New York. The principal theory of his complaint was that the 1970 resolution violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., because it was motivated by his union's desire to replace older engineers with younger workers who would enrich the union's coffers by paying high training school and initiation fees.[4] Judge Harold R. Tyler, Jr., granted defendants' motion for summary judgment and dismissed the complaint. 355 F.Supp. 89 (D.C.1973). Plaintiff thereafter filed an amended complaint, alleging that because the 1970 resolution was im-

properly motivated, the pension fund was not being administered in accordance with the requirements of section 302 of the Taft-Hartley Act, 29 U.S.C. § 186. In an unpublished opinion, Judge Tyler dismissed the amended complaint for lack of subject matter jurisdiction, holding that it asserted at most a breach by the Trustees of their fiduciary responsibilities under state law.[5]

■ We affirm the decisions of the district court. The Age Discrimination in Employment Act provides that it shall not be unlawful for a labor organization "to observe the terms of . . . any bona fide employee benefit plan such as a . . . pension . . . plan, which is not a subterfuge to evade the purposes of this chapter . . . ." 29 U.S.C. § 623(f)(2). MEBA Pension Trust was established in 1955, long before the passage of the Act, and pays substantial benefits to a broad class of workers. Thus, the Trust is certainly not itself a subterfuge to evade the purposes of the statute. We put to one side whether this does not end plaintiff's claim under the Act and assume arguendo that the Act applies to improper administration of a bona fide pension plan.

---

States or aboard any vessel covered by any collective bargaining agreement with the Association and any employment in the Association Locals or Plans.

A return to employment, as noted above, without written permission from the Trustees, shall be penalized in accordance with the MEBA Pension Trust Regulations.

At the time of de Loraine's 1964 withdrawal from the industry, the MEBA Pension Trust regulations provided:

. . . Retirement defined. To be considered retired an employee must withdraw completely from any further employment aboard any vessel documented under the laws of the United States or aboard any vessel covered by any collective bargaining agreement of the Association.

2. The 1970 Resolution provided:

Whereas, the emergency need for Marine Engineers brought about by the Vietnam War no longer exists,

It Is Hereby Resolved by the Trustees that each permission heretofore granted by the Trustees to a pensioner to return

to Covered Employment pursuant to Section 14 of Articles II and II–A of the Regulations shall be terminated effective April 1, 1971, or the termination date of any voyage on which he is then sailing, whichever is later, and it is further

Resolved, that the Administrator shall so advise each affected pensioner of this resolution.

3. Plaintiff's charge of age discrimination under New York law was dismissed on the merits by the State Division of Human Rights in May 1971. The State Human Rights Appeal Board affirmed in December 1971, both on the merits and on jurisdictional grounds.

4. Plaintiff alleged that half of the Trustees were representatives of the union and that the union president was chairman of the Board of Trustees.

5. Various state law claims by plaintiff were also dismissed for lack of pendent jurisdiction. These claims are not involved in this appeal.

Even on this assumption, however, plaintiff's action must fail. He was not, because of his age, forced to retire in 1964; he did so voluntarily. And he does not contend that the Trustees acted illegally in making complete withdrawal from the industry a prerequisite to a pension.[6] That condition was equally imposed upon all and its legitimate purpose—to protect the pension fund from exhaustion by those who would use their benefits as unemployment insurance or to support extended sabbaticals—is readily apparent. Nor does he deny that the "complete withdrawal" policy, suspended during a period of peak wartime demand for marine engineers, was reinstated at a time when that demand ceased. Against this background, plaintiff even on a motion for summary judgment had the burden of setting forth some facts to show that the blanket reinstatement of the original unattacked policy was discriminatory. As Judge Tyler properly held, 355 F.Supp. at 92,

plaintiff failed to do so,[7] offering instead "mere conclusory allegations."[8]

■ This reasoning also requires dismissal of the Taft-Hartley Act claim of the amended complaint, although Judge Tyler dismissed it on a different basis.[9] Plaintiff contends that the Trustees, in adopting the 1970 resolution, were administering the pension plan for the institutional benefit of the union, rather than "for the sole and exclusive benefit of the employees" as required by section 302(c)(5) of the Act, 29 U.S.C. § 186(c)(5). This contention, however, requires very much the same showing of improper motivation as the Age Discrimination Act claim and rests upon virtually the same inadequately substantiated allegations.[10] Consequently, we hold that plaintiff has failed to raise any genuine issue of material fact necessitating trial of his Taft-Hartley Act claim.

Judgment affirmed.

6. Plaintiff does claim, however, that at the time of his first withdrawal the Trustees followed a "swinging door" policy, granting permission to return to work in the industry without loss of pension rights as a matter of course. But this contention flies in the face of the pension trust regulations and plaintiff's own signed statement of withdrawal, see note 1 supra, and on the motion for summary judgment, he offered no evidence of the existence of such a policy beyond his own assertion that it was well known in the industry.

7. On this view of the age discrimination claim, we need not review the district court's alternative holding that defendant pension trust was not a "labor organization" or agent thereof within the meaning of the Act. 29 U.S.C. § 630(d). We also decline to consider at this time the argument of amicus curiae, National Senior Citizens Law Center, that the Act prohibits involuntary retirement pursuant to a pension plan before age 65. As noted in text, plaintiff did not take this position in the district court.

8. In his only affidavit in opposition to defendants' motion for summary judgment on the original complaint, plaintiff simply stated a belief that the 1970 resolution was designed to discriminate against older workers without indicating the source of this belief.

9. As noted earlier, Judge Tyler dismissed this claim for want of subject matter jurisdiction, holding that §§ 302(c)(5) and (e) of the Taft-Hartley Act, 29 U.S.C. §§ 186(c)(5) and (e), did not confer jurisdiction upon the federal courts to entertain a suit alleging maladministration—as distinguished from structural defects—in covered pension plans. Whether this was a proper characterization of the law and what constitutes a structural defect raise difficult and complicated issues. Compare Snider v. All State Administrators, Inc., 481 F.2d 387 (5th Cir. 1973), cert. denied, 414 U.S. 685, 94 S.Ct. 771, 39 L.Ed.2d 90 (1974), and Bowers v. Ulpiano Casal, Inc., 393 F.2d 421 (1st Cir. 1968), with Lewis v. Mill Ridge Coals, Inc., 298 F.2d 552, 558 (6th Cir. 1962) (dictum), Lugo v. Employees Retirement Fund, 366 F.Supp. 99 (E.D.N.Y.1973), and Porter v. Teamsters Health Funds, 321 F.Supp. 101 (E.D.Pa. 1970). In view of the insubstantiality of plaintiff's case on the merits, we express no opinion on these issues.

10. The principal additional piece of evidence proffered was a letter from the president of the union to another retiree seeking to return to work. This letter says essentially that reinstatement of retirees is not practical given the financial structure of the pension plan.