John T. DUNLOP, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

HAWAIIAN TELEPHONE COMPANY, a corporation, Defendant.

Civ. No. 75–293.

United States District Court, D. Hawaii.

June 23, 1976.

Mildred L. Wheeler, U. S. Dept. of Labor, San Francisco, Cal., Harold M. Fong, U. S. Atty., Honolulu, Hawaii, for plaintiff.

Jared H. Jossem, Torkildson, Katz, Conahan, Jossem & Loden, Honolulu, Hawaii, for defendant.

## DECISION AND ORDER

WONG, District Judge.

Plaintiff, Secretary of Labor, on behalf of eight individuals, seeks to enjoin defendant Hawaiian Telephone Co. (hereinafter referred to as "Hawtel") from violating the provisions of § 4 of the Age Discrimination in Employment Act (hereinafter referred to as "ADEA") of 1967, 29 U.S.C. § 621 et seq., and of § 15 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. Plaintiff seeks damages on behalf of

the eight individuals whose employment was terminated by Hawtel pursuant to its retirement plan.

Hawtel's plan was adopted in 1931. Although the plan was amended in 1965, 1967 and 1971, § 3(1)(b), pertaining to retirement, and at issue in this dispute, has never been amended. Section 3(1)(b) permits a member of the plan to retire voluntarily upon attaining age 60. The company may involuntarily "retire" the employee at that age. Retirement is mandatory at age 70; however, a member may be retained beyond that age at the election of the company.

The plan provides for payment of substantial benefits to a member who is retired at age 60 or at a later age. The eight individuals have been receiving substantial benefits under the plan. A total of $120,000 has been paid to them in the form of retirement benefits.

The purpose of the ADEA is "to promote employment of older persons based on their ability rather than age; [and] to prohibit arbitrary age discrimination in employment . . . ." 29 U.S.C. § 621(b). Moreover, the ADEA makes it unlawful for an employee to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). An exception, however, provided in § 4(f)(2), 29 U.S.C. § 623(f)(2), states that it shall not be unlawful for an employer to "observe the terms of . . . any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, . . . ."

This Court has no difficulty in concluding that Hawtel's plan is a bona fide employee benefit plan. In *Brennan v. Taft Broadcasting Co.,* 500 F.2d 212 (5th Cir. 1974), the court held that a bona fide plan in effect prior to the passage of the ADEA is *per se* not a "subterfuge" of the Act:

Taft's "Plan" was effectuated far in advance .of the enactment of the law, eliminating any notion that it was adopt-

ed as a subterfuge for evasion. 500 F.2d 212, 215.

Since Hawtel's plan was put in effect in 1931, under the rationale expressed in *Taft,* this Court would be compelled to find that the plan was not a "subterfuge."

This Court has difficulty reaching the same conclusion as the *Taft* court that all bona fide plans in effect prior to the enactment of the ADEA are automatically grandfathered into an automatic exclusion under § 4(f)(2), whether or not the plan, as actually applied, does in fact discriminate on the basis of age. The interpretation by the *Taft* court is not convincing since the selective retirement or discharge of an employee, although permitted under Hawtel's plan, may constitute an act of age discrimination.

The *Taft* holding differentiates between plans in existence prior to the ADEA and those instituted subsequent to the Act. Even if these two groups of plans are similar in all respects, and even if both are used as vehicles of age discrimination, the *Taft* rationale would automatically protect the plans in existence while putting the new plans to the scrutiny of determining whether the plans are being used to effect age discrimination.

Defendant Hawtel relies on the *Taft* holding. Hawtel's plan has been in existence prior to 1967 and thus defendant argues the use of the plan to terminate employees cannot be deemed a subterfuge to accomplish age discrimination.

Defendant cannot prevail on the basis of this argument. However, this Court finds for the defendant on the grounds that the word "subterfuge" as used in § 4(f)(2) must be given a meaning other than the plain meaning that one would assume upon reading the statute. As a result, this Court reads "subterfuge" as denying defendant the protection of § 4(f)(2) only if the defendant uses a retirement plan as a subterfuge to retire an employee without the payment of substantial benefits. Since Hawtel's plan does provide for sufficient benefits upon retirement, this Court

holds that Hawtel's plan meets the requirements of § 4(f)(2), and thus retirement under Hawtel's plan, although possibly for age considerations and therefore in potential violation of the ADEA, escapes coverage under the Act.

The plain reading of "subterfuge" in § 4(f)(2) seems to render the section meaningless. The apparent purpose of § 4(f)(2) is to allow employers to retire employees pursuant to a plan for age reasons and not be held in violation of the Act. The word "subterfuge" would appear to refer to the deceptive use of a retirement plan to accomplish some act of age discrimination. Thus, regardless of how "genuine" or "authentic" (*see Brennan v. Taft Broadcasting Co.*, 500 F.2d 212, 217 (5th Cir. 1974)) a plan might be on its face or in its inception, if the employer retires an employee (in effect terminating the employee for age considerations) pursuant to a retirement plan, then, in effect, the plan is being used to accomplish an act of age discrimination. Thus, the retirement of an employee is a "subterfuge" and the employer cannot seek refuge in § 4(f)(2).

Still, Congress must have intended that the exception have some purpose. It is possible that the intent of Congress was to allow the exclusion of the aged from a retirement plan but not permit the discharge or failure to hire of an individual included in a retirement plan.[1]

The regulation interprets § 4(f)(2) as follows:

(a) . . . Thus, the Act authorizes involuntary retirement irrespective of age, provided that such retirement is pursuant to the terms of a retirement or pension plan meeting the requirements of section 4(f)(2). The fact that an employer may decide to permit certain employees to continue working beyond the age stipulated in the formal retirement program does not, in and of itself, render an otherwise bona fide plan invalid insofar as the exception provided in section 4(f)(2) is concerned.

(b) This exception does not apply to the involuntary retirement before 65 of employees who are not participants in the employer's retirement or pension program. 29 C.F.R. § 860.110.

In attempting to interpret subdivision (a), this Court returns to the necessity that the plan meet the requirements of § 4(f)(2)—that the plan is not a subterfuge for the evasion of the purposes of the Act. The last sentence of subdivision (a) would seem to permit selective age discrimination. Such an act, in and of itself, would not render the plan invalid.

Since under subdivision (b) the exception expressly does not apply to involuntary retirement of non-members of a plan, by implication involuntary retirement of employees who are members of the retirement plan is permissible, even if such retirement is motivated by reasons of the employee's age.

Taking the two subdivisions together, it would appear that the term "subterfuge to evade" refers to involuntary retirement of a plan member on the basis of age only if the retirement benefits are not sufficient. Therefore, § 4(f)(2) does permit age discrimination in discharging employees pursuant to a valid plan as long as the plan is not a subterfuge to deny these employees sufficient benefits.

Such a reading of the word "subterfuge" is necessary to avoid interpreting § 4(f)(2) as meaningless. As stated earlier, the plain reading of the phrase "subterfuge to evade the purposes of this chapter" renders the

---

1. The observation of Senator Javits may be pertinent:

The meaning of this provision [§ 4(f)(2)] is as follows: An employer will not be compelled under this section to afford to older workers exactly the same . . . benefits as he affords to younger workers. If the older worker chooses to waive all of those provisions, then [he] can obtain the benefits of this act, but [he] cannot compel an employer through the use of this act to undertake some special relationship, course, or other condition with respect to a retirement . . . plan which is merely a subterfuge to evade the purposes of the act . . . in order to give that older employee employment on the same terms as others. Cong. Record—Senate 31255, Nov. 6, 1967.

section nugatory. The section makes more sense if the phrase is read as contemplating the act of terminating an employee (on the basis of age pursuant to a plan) without paying the employee substantial benefits. The "subterfuge" involved is not the act of termination on the basis of age but the failure to pay the employee sufficient retirement benefits following such a termination.

Thus, since defendant paid sufficient retirement benefits to the eight individuals, Hawtel's actions of involuntarily retiring these employees prior to age 65 pursuant to their bona fide retirement plan is exempted from the proscriptions of the Act by § 4(f)(2).

Accordingly it is hereby ordered, adjudged and decreed that summary judgment be granted in favor of defendant Hawaiian Telephone Company and against plaintiff Secretary of Labor.