**Harris S. McMANN, Appellant,**

v.

**UNITED AIR LINES, INC., Appellee.**

No. 75–2206.

United States Court of Appeals,
Fourth Circuit.

Argued June 10, 1976.

Decided Oct. 1, 1976.

Francis G. McBride, McLean, Va., for appellant.

Carin Ann Clauss, Associate Sol., U. S. Dept. of Labor, Washington, D.C. (William J. Kilberg, Sol. of Labor, Jacob I. Karro, Atty., U. S. Dept. of Labor, Washington, D.C., on brief), as amicus curiae.

Joseph A. Rafferty, Jr., Washington, D.C. (Earl G. Dolan, Chicago, Ill., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

This appeal presents a narrow issue: Does the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, proscribe the retirement of an employee at age 60 when the retirement is brought about solely because of his membership in an employees' retirement plan which contains a provision making retirement mandatory at that age and when the effective date of the retirement plan preceded the effective date of the Act? The answer to the question turns on whether a preexisting pension plan which requires retirement prior to age 65 falls within the exception contained in 29 U.S.C. § 623(f)(2), "[i]t shall not be unlawful for an employer . . . to observe . . . any bona fide employees benefit plan . . . which is not a subterfuge to evade the purposes [of the Act]." The district court thought the exception applicable, relying principally on *Brennan v. Taft Broadcasting Co.*, 500 F.2d 212 (5 Cir. 1974). Despite *Brennan* and other authorities, we conclude otherwise. We reverse the summary judgment awarded the employer and remand the case for further proceedings.

## I.

The relevant facts are largely stipulated. McMann was hired by United Airlines (United) in 1944, and served in various

capacities, most recently as a "Technical-Specialist—Aircraft Systems," until his retirement on February 1, 1973. At the time McMann was hired, United had in effect an employee retirement plan, participation in which was voluntary at the option of the employee.[1] Initially, McMann decided not to join the plan. However, in 1964, he elected to participate. The application card he signed, and subsequent documents he received, showed that the "normal retirement age" for employees in his job category was 60.

While the meaning of the word "normal" in this context is not free from doubt, counsel agreed in oral argument on the manner in which the plan is operated in practice. The employee has no discretion whether to continue beyond the "normal" retirement age. United legally may retain employees such as McMann past age 60, but has never done so: its policy has been to retire all employees at the "normal" age. Given these facts, we conclude that for purposes of this decision, the plan should be regarded as one requiring retirement at age 60 rather than one permitting it at the option of the employer.[2]

McMann was retired at age 60, in compliance with the plan. It is conceded that the plan is "bona fide" in the sense that it exists and pays benefits. United presented no evidence, however, to show that the provision of its plan requiring retirement at age 60 had any purpose other than arbitrary age discrimination. It sought and obtained summary judgment solely on the theory that since its plan was indisputably adopted prior to the effective date of the 1967 Act (June 12, 1968), the mandatory retirement provision contained therein was not proscribed.[3]

## II.

The Age Discrimination in Employment Act generally prohibits an employer from discharging any individual between the ages of 40 and 65 because of age. 29 U.S.C. §§ 623(a)(1), 631. However, as previously stated, 29 U.S.C. § 623(f)(2) provides an exemption from this broad rule.[4] In pertinent part, that section provides that

1. We attach no significance to the fact that McMann could have chosen not to join the plan. Realistically, an employee's decision whether or not to forego lucrative benefits, funded in part by employer contributions he would not otherwise receive, is not "voluntary" in the sense we think it would have to be in order to find a waiver of statutory protection. Moreover, we doubt that Congress intended employees and employers, either individually or in collective bargaining, to be able to waive rights granted by the Act. There is little question that an attempt to condition employment itself on the surrender of protection against discharge because of age would be legally ineffectual; we see no reason why participation in a retirement plan should be treated differently.

2. If we were to treat the plan as one permitting United to retire employees at age 60 or later, at its option, we would face the situation confronted by the court in *Brennan*, supra. There, Judge Tuttle argued forcefully in dissent that, "at the very least," to qualify for the exemption early retirement pursuant to a plan would have to be *compulsory* on both the employee and the employer. 500 F.2d at 220. Judge Tuttle drew support for this conclusion from the statutory language, "it shall not be unlawful for an employer . . . to *observe* the terms of a bona fide" plan. (Emphasis added.) Arguably, if under a plan the employer has discretion not to

retire an employee, the employee's discharge is not action taken "to observe" the terms of the plan.

3. Our reversal of United's summary judgment does not finally decide this case even though most of the operative facts have been stipulated. United may have other valid defenses. For example, we note that the Act provides another exemption where age is a "bona fide occupational qualification." 29 U.S.C. § 623(f)(1). United may raise this defense on remand. Of course, we express no opinion as to its applicability to McMann, whose principal duties apparently did not involve flying airplanes, but were managerial in nature. We note, however, that the burden of proving the elements required for invocation of any statutory exemption will be on United. *Cf. Weeks v. Southern Bell Tel. & Tel. Co.*, 408 F.2d 228, 232 (5 Cir. 1969) (burden on employer to show existence of elements required for bona fide occupational qualification exception under Title VII of the Civil Rights Act of 1964.)

4. United draws our attention to the Secretary of Labor's regulation, 29 C.F.R. § 860.110, which states that "the Act authorizes involuntary retirement irrespective of age." By its terms, this regulation is interpretive, not legislative. *See* 29 C.F.R. § 860.1 (views subject to

[i]t shall not be unlawful for an employer . . . to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual. . . .

The only reported appellate decision to construe this section is *Brennan v. Taft Broadcasting Co.*, 500 F.2d 212 (5 Cir. 1974), decided over a sharp dissent by Judge Tuttle.[5] The *Brennan* majority rested its holding on a reading of the "unambiguous language of the statute," 500 F.2d at 217, and thus disregarded the legislative history and policy considerations which it conceded might support a different result. We believe the language of the statute is clear, but that the *Brennan* court's interpretation of it is erroneous.

*Brennan*'s only discussion of the "subterfuge" clause in the statute is as follows:

Taft's "Plan" was effectuated far in advance of the enactment of the law, eliminating any notion that it was adopted as a subterfuge for evasion. 500 F.2d at 215.

We find this statement unconvincing because what is forbidden is not a subterfuge to evade the *Act*, but a subterfuge to evade

the *purposes* of the Act. These purposes are clearly spelled out in 29 U.S.C. § 621(b), and speak to concerns older than the Act itself:

It is . . . the purpose of this chapter to promote employment of older persons based on their ability rather than age; *to prohibit arbitrary age discrimination in employment*; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

Thus, in order to qualify for the exemption, a plan must not be a subterfuge to evade the Act's purpose of prohibiting arbitrary age discrimination. Stated otherwise, there must be some reason other than age for a plan, or a provision of a plan, which discriminates between employees of different ages. At this stage of the proceedings, United has offered no non-arbitrary justification for the age 60 retirement provision in its plan.

■ Any other reading of the "subterfuge" clause would produce the absurd result that an employer could discharge an employee pursuant to a retirement plan for no reason other than age, but then could not refuse to rehire the presumptively otherwise-qualified individual, for 29 U.S.C. § 623(f)(2) explicitly provides that "no such employee benefit plan shall excuse the failure to hire any individual. . . ."

change in light of court decisions or reexamination by Department of Labor). As evidenced by the Secretary's amicus curiae brief and argument, he has now concluded that the statement in the regulations is erroneous. As we understand the Secretary's present position, it is substantially in accord with the result we reach here. Thus, the regulation has no significance for our decision. We express no opinion as to whether it may provide the basis of a defense under 29 U.S.C. §§ 259, 626(e).

**5.** See note 2, supra.

Four other reported cases have discussed the benefit plan exemption. *de Loraine v. Meba Pension Trust*, 499 F.2d 49 (2 Cir.), cert. denied, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974), did not deal with the issue presented here. The court explicitly stated: "We also decline to consider at this time the argument of amicus curiae . . . that the Act prohibits involuntary retirement pursuant to a pension plan before age 65. As noted in text, plaintiff

did not take this position in the district court." 499 F.2d at 51 n.7.

Language in *Hodgson v. American Hardware Mutual Ins. Co.*, 329 F.Supp. 225 (D.Minn. 1971), which tends to support United's position, is plainly dictum. The court stated at the outset of its opinion: "The parties agree that the Plan is a bona fide employee benefit plan within the meaning of . . . the Act." 329 F.Supp. at 227.

*Steiner v. National League of Professional Baseball Clubs*, 377 F.Supp. 945 (C.D.Cal.1974), is contrary to our decision. But *Steiner* offers no analysis and relies heavily on the Secretary of Labor's regulation, 29 C.F.R. § 860.110, which is no longer relevant in light of the Secretary's present position. See note 4, supra.

The fourth case, *Dunlop v. Hawaiian Tel. Co.*, 415 F.Supp. 330 (D.Hawaii, 1976), is discussed in n.6, infra.

"[C]onceptually there is no difference between a mandatory retirement age of sixty-two and a refusal to hire anyone who is sixty-two years old." *Hodgson*, 329 F.Supp. at 229.

## III.

■ The result we reach is fully consistent with the legislative history. While it is often said that resort to legislative history is inappropriate where the statute is clear on its face,

> when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' *United States v. American Trucking Assns.*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (footnotes omitted), *quoted with approval in Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 10, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976).

The joint House-Senate report on the section of the age discrimination bill that was to become 29 U.S.C. § 623(f)(2) states:

> It is important to note that exception (3) applies to new and existing employee benefit plans, and to both the establishment and maintenance of such plans. This exception serves to emphasize the primary purpose of the bill—hiring of older workers—by permitting employment without necessarily including such workers in employee benefit plans. H.R. Rep.No.805, 90th Cong., 1st Sess., 2 U.S. Code Cong. & Admin.News, pp. 2213, 2217.

Thus, Congress in drafting the exemption was concerned that requiring equal participation in employee benefit plans by newly-hired older workers could discourage the employment of such workers, since their age would not permit them to accumulate the years of service necessary to make participation in the plans economically feasible. The fact that the exemption contains the proviso "that no such employee benefit plan shall excuse the failure to *hire* any individual" (emphasis added) confirms that Congress was addressing itself to the problem of the worker hired late in his career, and did not intend to validate plans which discriminate on the basis of age against employees such as McMann who have "earned" their benefits through many years of plan membership.

■ Although we conclude from the legislative history that Congress did not intend retirement plan provisions ever to excuse the failure to hire *or the discharge* of any individual, but only to permit exclusion of some workers *from the plan* on the basis of age where exclusion is justified by economic considerations, we recognize that the statute as drafted does permit an employer to discharge employees "to observe the terms of" a plan. However, as we have already observed, in order to escape condemnation as a "subterfuge," an early retirement provision must have some economic or business purpose other than arbitrary age discrimination.

At oral argument, United's counsel conceded that if its plan, with its involuntary early retirement provision, were adopted now, it would probably violate the Act. Thus, its position is that the plan is immunized because it predates the Act. United rests on the *Brennan* court's conclusion that any action required by a plan predating the Act is valid, since such a plan could never be a subterfuge. While we have already pointed out the fallacy in this reasoning, it is also refuted by the legislative history. The report states that the exemption "applies to new and existing employee benefit plans, and to both the establishment and maintenance of such plans." It is difficult to reconcile this language with a construction of the statute which would treat new and existing plans *differently*, automatically validating the provisions of existing plans by refusing to inquire into their purpose. In addition, the legislative history makes it clear that the *maintenance* of a discriminatory plan is to be considered independently under the exemption. To avail himself of the exemption, an employer must demonstrate that a plan is not being *maintained* as a subterfuge to evade the Act, as

well as showing benign establishment, in order to prevail. United has offered no justification for maintaining its early retirement provision after the Act became effective.[6]

## IV.

Our reading of the statute and its legislative history is a realistic one. There are over eleven million employees who are members of retirement plans which require retirement before age 65; there are another several million who are members of plans which permit forced retirement before 65.[7] We think it unlikely that Congress intended to leave the vast loophole in this broad remedial legislation which United would have us fashion. We can foresee no pernicious effects on the nation's employee benefit plans from our decision. Ordinarily, postponement of retirement results in cost savings to a plan providing retirement benefits.[8] If legitimate considerations other than an employer's preference for youth justify the forced retirement of employees before age 65, 29 U.S.C. § 623(f)(2), as we construe it, permits such action.

*REVERSED AND REMANDED.*

---

6. *Brennan*'s conclusion that the subterfuge clause automatically validates the provisions of all pre-Act plans was rejected in *Dunlop v. Hawaiian Tel. Co.*, note 5, supra, for much the same reason we discuss in the text. However, the *Dunlop* court upheld a plan permitting involuntary retirement at age 60, based upon an admittedly disingenuous reading of the word "subterfuge" to mean a scheme to retire employees early without payment of substantial benefits. The court felt compelled to reach this result in order to give effect to the Secretary of Labor's interpretive regulation, 29 C.F.R. § 860.110, discussed in note 4, supra, which it presumed to mirror congressional intent. The court nevertheless observed that Congress might have intended to allow the exclusion of the aged from a retirement plan but not permit the discharge of aged individuals pursuant to a plan, as we have concluded, in which case "subterfuge" could be given its normal meaning. Apparently the *Dunlop* court did not have the benefit of the Secretary's revised position. Accordingly, to the extent that *Dunlop* relied on the regulation, its authority is weakened.

7. *See* U. S. Dept. of Labor, Monthly Labor Review, Vol. 69, No. 4, p. 41 (April 1973).

8. Savings come from two sources. Mortality before retirement eliminates or reduces the benefits payable. In addition, the higher retirement age shortens the period during which benefits will be paid to retirees. M. Bernstein, The Future of Private Pensions, 226 (1964).