Ray MARSHALL, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

ATLANTIC CONTAINER LINE, G. I. E.
and Atlantic Container Line, Inc.,
Defendants.

No. 77 CIV 4767 (LBS).

United States District Court,
S. D. New York.

March 16, 1979.

Francis V. LaRuffa, Regional Sol., U. S.
Dept. of Labor, New York City, for plain-

tiff; Theodore T. Gotsch, New York City, of counsel.

Galland, Kharasch, Calkins & Short, Washington, D. C., for defendants; George F. Galland, Olga Boikess, Thomas A. Johnson, Washington, D. C., of counsel.

SAND, District Judge.

The Secretary of Labor ("Secretary") has alleged in this action that Atlantic Container Line, G. I. E. and Atlantic Container Line, Inc. ("ACL") violated the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA") by involuntarily retiring employees who have reached the age of 62. ACL, on the other hand, contends that these retirements are excluded from the Act by virtue of § 4(f)(2).

Both parties moved for summary judgment. In an opinion dated November 28, 1979,[1] this Court denied these motions because a question of fact remained as to whether the 1974 amendment to ACL's plan was a subterfuge to evade the purposes of ADEA and whether ACL relied in good faith upon the administrative regulation.[2] The Court set the matter down for an evidentiary hearing unless the parties advised the Court that the stipulation of facts exhausted their submission on these two questions and that they wished this Court to proceed without holding an evidentiary hearing as if this case were before it on an agreed statement of facts from which this Court may draw those inferences which it believed to be appropriate.

By letters dated December 19, 1978 and December 20, 1978, the parties agreed to present the two issues to the Court based upon the stipulation of facts and affidavits previously filed with the Court. The parties requested, however, the opportunity to file briefs on the issues, which they have done.

SUBTERFUGE

■ As this Court noted in its prior opinion, § 4(f)(2) does not contain a blanket exception for all retirements pursuant to a pension plan. In order to qualify for the exemption, an employee must show that it was observing the terms of a bona fide pension plan which was not a subterfuge to evade the purposes of the Act. ACL, this Court found, met the first two requirements.[3] The question remains, however, whether the 1974 amendment to the plan which lowered the retirement age to 62 constitutes a subterfuge to evade the purposes of ADEA.

The fundamental principles governing the subterfuge issue were outlined by this Court in its earlier opinion:

"The Supreme Court in *McMann [United Airlines v. McMann]* defined subterfuge as a 'scheme, plan, strategem, or artifice of evasion'. Moreover, the Court stated that in terms of § 4(f)(2), the term 'must be given its ordinary meaning and we must assume Congress intended it in that sense.' 434 U.S. [192] at 203 [98 S.Ct. 444, 54 L.Ed.2d 402]. Finally, the Supreme Court cautioned against any '*per se* rule requiring an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act.' 434 U.S. at 203 [98 S.Ct. 444]." 18 EPD ¶ 8449 at 5509.

The Secretary argues that based on the evidence submitted by the parties, this Court must conclude that this amendment was a subterfuge. According to the Secretary, "ACL had one overriding purpose in amending its pension plan: to get rid of its oldest employees so that younger employees would be promoted and younger applicants hired." Plaintiff's Reply Brief at 2.

■ ACL, on the other hand, contends that "[r]etirement actions which are taken pursuant to a *bona-fide* retirement plan satisfy section 4(f)(2) requirement, and no independent showing need be made con-

---

1. The opinion is reported at 18 EPD ¶ 8849.

2. This Court held that the 1978 amendment to § 4(f)(2) applies only prospectively. It found that ACL observed the terms of its pension plan and that this plan was bona fide within the meaning of § 4(f)(2).

3. See discussion, 18 EPD ¶ 8849 at 5508 *et seq.*

cerning subterfuge." Defendant's Brief at 3. In support of their contention that any bona-fide plan is per se not a subterfuge to avoid ADEA, ACL cites four decisions[4] where the courts have not imposed a separate subterfuge test and the legislative history of ADEA.

We conclude that neither position accurately reflects the Supreme Court's reading of the subterfuge requirement in *McMann*. The Secretary's interpretation requires an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act. Such a requirement was expressly rejected by the majority in *McMann*. ACL's interpretation, on the other hand, renders the phrase mere surplusage, ignoring the Court's definition of subterfuge as something other than a bona-fide plan.

The record before us is limited. When the amendment lowering the age to 62 was adopted, ACL distributed the following explanation of the change to its management personnel:

"[w]e must [take this action], if we hope to perpetuate a strong organization plan, through all means at our disposal, to create opportunities which will provide ascension opportunities while also providing proper levels of retirements benefits to those who have served as well.

It is proposed that we reduce our normal retirement age from 65 to 62. While the cost is rather steep, it will grow more costly as the age of the group increases. It must be noted that when this step is taken, the benefit formula will reduce from 20% of the first $500 of the monthly benefit earnings and 50% of the excess to 20% of the first $500 and 48.125% of the excess. This is to reflect a reduction of the social security integration spread and is a requirement of the Internal Revenue." [Stipulated Fact 12].

According to James Allen, Manager of Personnel and Service for ACL:

"The early retirement provision in our Pension Plan is not a subterfuge to evade the purposes of the Age Discrimination in Employment Act of 1967. On the contrary, it has clear and direct business purposes, as required by the language and spirit of the Act, its accompanying regulations and cases litigated to date." [Exhibit J to the Stipulated Facts].

The parties also stipulated that ACL's Personnel and Service Manager explained to one of the plaintiffs in this action that the new company retirement policy was intended to close the gap between the retirement age in Britain and the United States, to bring young people into the company to train them, and to provide all ACL employees with greater promotional opportunities in an industry (ocean shipping) which had little or no growth potential. [Stipulated Fact 23].

■ We find nothing in this record which justifies attaching the label "subterfuge" to ACL's amendment process. As we stated in our earlier opinion:

"Although we agree with the Secretary that Mr. Allen mentioned age as a reason for lowering the retirement age, we note that other reasons were also given. Thus, Mr. Allen explained that the amendment had what could be construed as business purposes, *i. e.*, to close the gap between the retirement age in Britain and the United States. Moreover, although the Secretary interprets the state-

---

**4.** ACL cites *Zinger v. Blanchette*, 549 F.2d 901 (3d Cir. 1977); *Brennan v. Taft Broadcasting Company*, 500 F.2d 212 (5th Cir. 1974); *Dunlop v. Hawaiian Telephone Company*, 415 F.Supp. 330, 331 (D.Hawaii 1976); *Marshall v. The Baltimore & Ohio Railroad Company et al.*, 461 F.Supp. 362 (D.Md.1978).

These cases, however, are distinguishable. *Zinger, Brennan* and *Dunlop* all involve plan provisions which antedate ADEA. As the Supreme Court stated in *McMann*, a plan established before the passage of ADEA cannot be a subterfuge. Although *Marshall v. Baltimore & Ohio Railroad Company* involved a plan which was amended after enactment of ADEA, the district court noted that "[i]t is clear that defendants have always had the power to involuntarily retire their employees under the consistent application of their plans. It seems to this Court that the mere codification of this power in 1972 could not operate to somehow convert these pre-Act plans into post-Act 'subterfuge'."

ment that the amendment was passed to provide greater promotional opportunities as age discrimination, it need not be read so narrowly. A provision for greater promotional opportunites *per se* does not mean older workers will necessarily be replaced by younger workers, especially since Mr. Allen spoke of providing 'all ACL employees with greater promotion opportunities'. (emphasis added)." 18 EPD ¶ 8849 at 5509–10.

Accordingly, we find that ACL is entitled to a section 4(f)(2) exemption.

## GOOD FAITH

Alternatively, ACL argues that they have a good faith defense under the Portal-to-Portal Act.[5] As a basis for this defense, ACL states "that it consulted its attorneys prior to the retirement of Messrs. Hasko and Kurek and was told that it was entitled to rely on the terms of the Act, § 4(f)(2), as interpreted in the agency's published regulation, 29 C.F.R. § 860.110,[6] notwithstanding Mr. Friedman's[7] advice." Defendants' Supplemental Brief at 11–12.

Besides the legal arguments which were raised in its initial motion papers, the Secretary argues that:

"ACL's entire course of conduct demonstrates a lack of good faith in this respect. It made *no* attempt to find out whether its plan amendment violated the Act before adopting it. It moved full speed ahead with its program of forced retirement despite the legal advice of the Secretary's representatives to the contrary and in the face of the only appellate case law directly in point. On this ACL has not met its burden of proving good faith." Plaintiff's Reply to Defendant's Supplement Memorandum, p. 10.

Limiting ourselves to the narrow question before us, *i. e.,* whether ACL had "an honest intention to ascertain what the . . . Act requires and to act in accordance with it,"[8] we conclude that on the facts presented to us, ACL sustained its burden of proving a good faith defense.

When ACL was informed by the Department of Labor that the planned retirement violated ADEA, ACL consulted their attorneys. Based on the official administrative regulation, ACL was advised that such retirements were permitted. Although the Department of Labor representative expressed a contrary interpretation, ACL's knowledge of the conflicting opinion does not defeat its good faith defense. Under the Portal-to-Portal Act, ACL was entitled to rely on the published administrative regulation and not the statements of an agency's official. See *Marshall v. Hawaiian Telephone Company,* 575 F.2d 763, 767 n.8 (9th Cir. 1978).

## CONCLUSION

Accordingly, defendants' motion for summary judgment is granted.

**SETTLE ORDER.**

---

**5.** Section 10 provides in pertinent part:
"[N]o employer shall be subject to any liability . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation of the agency."

**6.** This regulation provides in pertinent part: "[t]he Act authorized involuntary retirement irrespective of age, provided such retirement is pursuant to the terms of a retirement or pension plan meeting the requirements of section 4(f)(2)."

**7.** Mr. Friedman was a representative of the Department of Labor.

**8.** *Addison v. Huron Stevedoring Corp.,* 204 F.2d 88, 93 (2d Cir.), *cert. denied,* 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953).