**EQUAL EMPLOYMENT OPPORTUNI- TY COMMISSION, Plaintiff,**

v.

**CHRYSLER CORPORATION, Defendant.**

**No. 89 Civ. 1347 (RPP).**

United States District Court, S.D. New York.

Jan. 31, 1990.

Kelly Drye & Warren, Isreal E. Kornstein, New York City, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

The Equal Employment Opportunity Commission (EEOC) seeks liquidated damages and equitable relief from defendant Chrysler Corporation (Chrysler) in this action arising out of an alleged violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* due to denial of severance pay. This is a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and for summary judgment for defendant, pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

On September 6, 1985, Chrysler sold its Manhattan Sales and Service Operations Facility to Potamkin Chrysler Plymouth Dodge Inc. (Potamkin), effective October 6, 1985.

On September 12, 1985, Irving A. Zinn (Zinn), aged 57, and Jack Gioglio a/k/a Hunter (Gioglio), aged 59, each signed a "Retirement Election Form." Def. Ex. B. The forms provided that Zinn and Gioglio elected to be considered for the Special Early Retirement Plan when the Chrysler Manhattan Sales and Service Operations Facility closed. Only employees "who are age 55 and over with 10 or more years of credited service" were eligible for early retirement. *Id.* Zinn and Gioglio each had 22 years of credited service. The early retirements of Zinn and Gioglio became effective on September 30, 1985.

An Agreement "made and entered" October 3, 1985, between Teamsters Local 868 and Chrysler addressed the "impact of the sale [to Potomac] upon the employees." Def. Ex. A. Under the Agreement, employees who had one or more years of continuous service and who were not offered a position with Potamkin were to receive severance payments. The severance payment plan specifically excluded

E.E.O.C., Christopher P. Lee, New York City, for plaintiff.

Zinn and Gioglio because they had "elected to file for special early retirement from the Company and receive special early benefits thereunder." *Id.*

On May 16, 1986, and December 19, 1986, Zinn and Gioglio respectively filed charges with the EEOC "alleging Chrysler had failed to provide severance pay to older terminated employees while providing severance and pension benefits to substantially younger co-workers." Pl. 3(g) Statement at 11, ¶¶ 26–27. On January 10, 1988, the New York District Office of the EEOC issued a "DETERMINATION" that the Office's "investigation does not establish a violation of the statute." Def. Ex. G. The Washington D.C. EEOC Office then issued a "DETERMINATION ON REVIEW OF ADEA CHARGE" on August 5, 1988. Def. Ex. H. That latter determination stated that defendant's severance pay plan constituted a violation of the ADEA and that the EEOC would begin conciliation, in accordance with Section 7(b) of the ADEA, before commencing a legal action.

By letter dated August 19, 1988, Chrysler's attorney informed the EEOC that its "conclusion of an ADEA violation has no legal support and, accordingly, conciliation efforts would not be called for." Def. Ex. I. On February 27, 1989, the EEOC filed this action, alleging that Chrysler violated the ADEA by "failing to provide severance benefits to terminated employees age 55 or older who were eligible for and received early retirement benefits." Comp. at 3, ¶ 3. Thus, the claim herein relates to defendant's failure to provide severance benefits and does not directly relate to the early retirement benefit plan.

## DISCUSSION

### A. Statute of Limitations

■ Defendant argues that the complaint should be dismissed as time barred under the statute of limitations. Plaintiff does not contend that the action is timely under ADEA's statute of limitations provision, Section 7(e) of ADEA, 29 U.S.C. § 626(e). Plaintiff's response rests upon the Age Discrimination Claims Assistance Act (ADCAA), 29 U.S.C. § 626 note. That amendment to the ADEA permits actions to be brought "during the 540 day period beginning on the date of [ADCAA's] enactment," notwithstanding Section 7(e). The date of the enactment was April 7, 1988. Both parties agree that plaintiff filed this action within 540 days of April 7, 1988.

The parties disagree, however, over whether this action satisfies one of the conditions precedent to invoking ADCAA's 540 day grace period. Section 3(3) of ADCAA sets forth the following condition precedent: "the statute of limitations applicable under such section 7(e) to such claim ran before the date of enactment [April 7, 1988] of this Act." The statute of limitations applicable under Section 7(e) is that of the Portal to Portal Pay Act:

> if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a).

Although the parties disagree over the exact month when this cause of action accrued, both parties agree that on April 7, 1988 more than two years and less than three years had passed since the accrual of this cause of action. Thus, on April 7, 1988, the Section 7(e) statute of limitations for a willful violation had not yet run, while the Section 7(e) statute of limitations for an ordinary violation had run.

The complaint alleges a willful violation, Comp. at 3, ¶ 9, and seeks liquidated damages, Comp. at 4, ¶ C, which are only available for a willful violation. 29 U.S.C. 626(b). Defendant characterizes the action as one for a willful violation which was still viable on April 7, 1988, under the three year statute of limitations. According to defendant, plaintiff is not entitled to file this action during the 540 day ADCAA period because plaintiff could still have timely filed this action for a willful viola-

tion on the date of ADCAA's enactment. Defendant attempts to support its position by citing Senator Melcher's remark that ADCAA is intended only to "restore ... legal rights.... no more and no less." 134 Cong.Rec. S1747 (March 2, 1988).

Plaintiff responds that Congress intended ADCAA to rejuvenate claims time barred by the two year statute of limitations and did not address those claims time barred by the three year statute of limitations. Under plaintiff's interpretation, Section 3(3)'s condition is satisfied as long as the two year statute of limitations has run. Plaintiff relies on the discussions of ADCAA on the floors of both houses of Congress which refer only to rejuvenating those claims on which "the EEOC failed to take action before the expiration of the 2–year statute of limitations." 134 Cong. Rec. H1253 (March 29, 1988) (remarks of Rep. Jeffords); *see also* 134 Cong.Rec. S1747 (March 2, 1988) (remarks of Sen. Melcher); 139 Cong.Rec. H1252–54 (March 29, 1988) (remarks of Rep. Martinez, Rep. Roybal, Rep. Clay, Rep. Lantos, Rep. Biaggi, Rep. Hawkins, Rep. Bonker). One court has interpreted this legislative history to support the proposition "that all actions, where section 3[(3)] of the Claims Act [ADCAA] applies, will be considered as having a two year statute of limitations whether willful or not." *EEOC v. Holiday Inn of Oil City*, 49 FEP 95, 1989 WL 44639 (W.D.Pa.1989).

This Court is not persuaded to go as far as the district court in *Holiday Inn of Oil City*. The primary reason is the plain language of ADCAA. *See Public Employees Retirement System of Ohio v. Betts*, —— U.S. ——, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989) (plain language of ADEA has more authority than either caselaw, legislative history or the EEOC's interpretation). Section 3(3) describes the condition precedent: "the statute of limitations applicable under such section 7(e) to such claim ran before the date of enactment of this Act." Under the terms of Section 7(e), both a two and a three year statute of limitations can

be applicable. *See supra*. The plain language of Section 3(3) and Section 7(e) contradicts *Holiday Inn of Oil City*.

Furthermore, a review of the congressional debates reveals that the plethora of references to the two year statute of limitations was not for the purpose of negating the applicability of the three year statute of limitations. Circulating through Congress at that time was a report that 900 potential ADEA cases had been extinguished recently by the two year statute of limitations. The expressions of outrage over this statistic do not imply that Congress only intended to address in ADCAA those claims extinguished by the two year statute of limitations.

◼ The Court's decision not to follow *Holiday Inn of Oil City* does not necessarily require dismissal of the action. Subsumed within the complaint is a cause of action arising out of an ordinary or non-willful violation. The complaint seeks equitable relief, Comp. at 4, ¶¶ B and C, for which a showing of willfulness is not necessary. Moreover, plaintiff informs the Court that even if it could not allege willfulness, the EEOC wishes to proceed to obtain the equitable relief to which it would be entitled under ADEA for an ordinary violation. Pl. Br. at 22 (Aug. 9, 1989); *see also* Oral Arg. Tr. at 34 (plaintiff agrees that an in limine decision to exclude evidence of willfulness would resolve statute of limitations issue).

This subsumed ordinary violation was time barred under the two year statute of limitations on April 7, 1988 and therefore would be eligible for the 540 day ADCAA extension of the statute of limitations. Accordingly, the Court declines to dismiss the case on this ground. The interests of justice require this ruling because Congress passed the ADCAA so that those ordinary claims time barred on April 7, 1988, such as that subsumed in the current complaint, could be filed within 540 days of April 7, 1988.[1]

---

**1.** The proper way to resolve this issue procedurally would be to grant plaintiff leave to file an amended complaint, pursuant to Federal Rule

of Civil Procedure 15(a), that does not allege a willful violation and thereby satisfies the statute of limitations provisions of ADCAA. Under

■ Plaintiff argues that it is still entitled to liquidated damages for a willful violation, under 29 U.S.C. § 626(b), even if the complaint is deemed to allege a non-willful violation for statute of limitations purposes. The foundation for this contention is the different origins of "willful" in 29 U.S.C. § 626(b), which provides for liquidated damages, and "willful" in 29 U.S.C. § 255(a), which provides for a three year statute of limitations. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–28, 105 S.Ct. 613, 623–25, 83 L.Ed.2d 523 (1985). This contention is without merit. The meaning of "willful" in the two sections is the same. *McLaughlin*, 108 S.Ct. at 1681–82 & n. 13. Since the EEOC must refrain from bringing an action arising out of Section 255(a) "willfulness" to avoid a time barred cause of action, it must also refrain from bringing an action arising out of the indistinguishable "willfulness" of Section 626(b). The purpose of the statute of limitations would be undermined if plaintiff could treat the action as one for a willful violation when requesting damages and as one for an ordinary violation when satisfying the statute of limitations.

### B. Prima Facie Case Under ADEA

#### 1. Section 4(a)(1)

■ In addition to the statute of limitations challenge, defendant moves for the Court either to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim or to grant summary judgment under Federal Rule of Civil Procedure 56.

■ As Section 4(a)(1), 29 U.S.C. 623(a)(1), is construed in *EEOC v. Westinghouse Electric Corp.*, 869 F.2d 696 (3d Cir.) [hereinafter *Westinghouse II* ], vacated and remanded, — U.S. —, 110 S.Ct. 37, 107 L.Ed.2d 7 (1989), and *EEOC v. Borden's, Inc.*, 724 F.2d 1390 (9th Cir.1984), the complaint would state a prima facie case for age discrimination. The challenged severance pay scheme excluded from eligibility those who had chosen early retirement. A prima facie case exists based on the terms of the severance pay scheme since early retirement is a benefit only available to those over the age of fifty-five, a class protected by ADEA.[2]

Defendant asserts that this case is distinguishable from *Westinghouse II* and *Borden's* because the plaintiffs in those cases had vested rights to early retirement which they would have had to sacrifice to be eligible for severance pay, while Zinn and Gioglio lacked absolute entitlements to early retirement and thus would not have had to sacrifice any vested rights to qualify for severance pay. Both plaintiff and defendant agree, however, that Zinn and Gioglio were offered specially created early retirement benefits and that for them to have been eligible for severance pay, they would have been forced to give up this newly created benefit.

While the early retirement benefits were a newly extended privilege and not a vested right of Zinn and Gioglio, the negotiated severance pay plan discriminated against the capacity of these older employees to take advantage of that newly extended privilege of early retirement. *See Thurston*, 469 U.S. at 121, 105 S.Ct. at 621

Federal Rule of Civil Procedure 15(c)'s relation back doctrine, the amended complaint would be deemed filed at the same time as the original complaint, which was within 540 days of April 7, 1988.

However, the Court declines to grant leave because it would be futile in light of the interpretation of ADEA's Section 4(f)(2) in *Betts, supra. See* discussion *infra.*

**2.** Under ADEA Section 4(f)(1), the issue remains whether exclusion of Zinn and Gioglio from the severance pay scheme was due not to age but to a legitimate, nondiscriminatory reason. *See de Loraine v. MEBA Pension Trust*, 499 F.2d 49 (2d

Cir.1974) (withdrawal of permission for retired engineers to return to work justified by factor other than age); *but see EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 222 (3d Cir.1983), ("eligibility for early retirement is too closely related to age to be given credence as a valid justification"), cert. denied, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). The record is insufficient to support a grant of summary judgment on the issue of whether there was a legitimate, nondiscriminatory justification for the exclusion of Zinn and Gioglio from the severance pay plan.

(in context of age discrimination, a benefit may not be doled out in a discriminatory fashion even if the benefit is a privilege which the employer would be free to withhold) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Accordingly, the severance pay plan discriminated against older employees' access to privileges offered to them by the company and is equivalent to the discrimination in *Westinghouse II* and *Borden's*.

## 2. Section 4(f)(2)

However, the inquiry into whether a prima facie case of age discrimination occurred because of the severance pay denial does not end with *Westinghouse II* and *Borden's*. The ADEA contains another provision, Section 4(f), 29 U.S.C. 623(f), which states:

> It shall not be unlawful for an employer, employment agency or labor organization—
>
>      \*     \*     \*     \*     \*     \*
>
> (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual.

Thus, to come within the terms of Section 4(f)(2), defendant has to show that it was: (1) acting in observance of (2) a bona fide employee benefit plan that (3) neither was a subterfuge (4) nor "require[d] or permit[ted] involuntary retirement" because of age.

Plaintiff does not contest that defendant adhered to a provision of the severance plan which required that those who chose early retirement be denied severance pay. The first condition is satisfied.

The defendant in *Westinghouse II* failed to satisfy the second condition because of that decision's ruling that a "bona fide employee benefit plan" must be justified by age-related cost factors. The Supreme Court, however, has struck down that rule as incompatible with the plain language of Section 4(f)(2) and held that a severance pay plan not justified by age can qualify as a bona fide employee benefit plan. *Betts, supra*. The Supreme Court did not venture further to define "the precise meaning of the phrase 'any bona fide employee benefit plan,'" *Id.* 109 S.Ct. at 2865 n. 6; however, the *Betts* opinion did provide guiding principles applicable to this case.

The basis for the age-related cost test had been Senator Javits's statement that the purpose of Section 4(f)(2) was to prevent ADEA from "'be[ing] used as the place to fight the pension battle.'" *Borden's*, 724 F.2d at 1395 (quoting Hearings on S.830 before Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 90th Cong., 1st Sess. 27 (1967)). Before *Betts*, circuit courts interpreted that statement to mean that only benefit plans justified by age-related costs were exempt from ADEA. *See Betts*, 109 S.Ct. at 2869 (Marshall, J., dissenting). The *Betts* Court, however, interpreted Senator Javits's remark to mean that all benefit plans are exempt, except for those integrally related to "hiring and firing, wages and salaries, and other nonfringe-benefit terms and conditions of employment." *Id.* at 2866–67.

Defendant's contention that the second condition is satisfied relies on two cases which characterize a severance pay plan as a fringe benefit plan, which would have satisfied the second condition but for the age-related cost test which was then still good law. *See Borden's*, 724 F.2d at 1396–97; *EEOC v. The Great Atlantic and Pacific Tea Co.*, 618 F.Supp. 115, 122 (N.D. Ohio 1985). The severance pay plan in this case, as in those cases cited by defendant, was "a one-time ad hoc cash payment" made upon the closing of a business or office and therefore only "a 'simple fringe benefit.'" 724 F.2d at 1396–97. There is not an integral connection between severance pay and nonfringe terms and conditions of employment with Chrysler, such as wages, salary, hiring and firing. *See*

*Betts,* 109 S.Ct. at 2868 (disability retirement plan is not pertinent to "nonfringe-benefit aspect of the employment relationship").

Plaintiff agrees that "the record shows that under the Agreement, severance pay was a one-time lump-sum cash-only payment by Chrysler out of operating funds, triggered by a single event." Pl. Br. at 10 (Aug. 9, 1989). However, plaintiff argues that such a characterization is why the severance scheme is beyond the scope of Section 4(f)(2)'s exemption. Plaintiff relies on precedent interpreting the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. *See Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). Under *Fort Halifax,* "ERISA's pre-emption provision [29 U.S.C. § 1144(a)] does not refer to state laws relating to 'employee benefits,' but to 'employee benefit *plans.'*" 107 S.Ct. at 2215 (emphasis added in original). Plaintiff urges the Court to be guided by *Fort Halifax's* interpretation of the meaning of "employee benefit plan" in ERISA's pre-emption provision.

The definition of "employee benefit plan" in *Fort Halifax* is derived from the legislative intent behind ERISA:

> Congress intended preemption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.

*Id.* at 2217. Accordingly, the Supreme Court held that a severance payment provision was not an "employee benefit plan" under ERISA's preemption provision, 29 U.S.C. § 1144(a). *Id.* at 2220.

*Fort Halifax's* holding that Congress did not intend to have ERISA preempt local regulation of severance payments, does not necessarily mean that Congress did intend to have ADEA regulate severance payments. Whether a payment scheme constitutes an ERISA plan is premised upon concerns for administrative integrity and uniform administrative procedures. Those concerns are irrelevant to ADEA, enacted seven years before ERISA. *See Betts,* 109 S.Ct. at 2866 (Congress did not address issues concerning regulation of employee benefits in ADEA at all). In light of the irrelevancy of ERISA caselaw on this issue and the guidance of *Betts,* the second condition of a "bona fide employment plan" is satisfied.[3]

The third condition for an exemption from ADEA is that the plan "is not a subterfuge to evade the purposes of this chapter." 29 U.S.C. § 623(f)(2).

> " '[S]ubterfuge' means 'a scheme, plan, stratagem, or artifice of evasion,' which, in the context of § 4(f)(2), connotes a specific 'intent . . . to evade a statutory requirement.' " [*United Airlines, Inc. v. McMann,*] 434 U.S. 192, 203 [98 S.Ct. 444, 450, 54 L.Ed.2d 402] [ (1977) ]. The term thus includes a subjective element. . . .

109 S.Ct. at 2863. The *Betts* opinion emphasized that a finding of subterfuge "requir[es] a showing of actual intent." *Id.* at 2868.

The statute of limitations requires that plaintiff's claim not be construed as a "willful" violation. *See* discussion *supra.* The standard for "willfulness" is "that the employer . . . knew . . . its conduct was prohibited by the statute." *McLaughlin,* 108 S.Ct. at 1681. "An act is done willfully and knowingly when the actor intends to do it and knows the nature of the act." Blacks Law Dictionary 1435 (4th Ed.1979). Since the statute of limitations bars a claim for relief which arises out of a "willful" violation, it is impossible for plaintiff to state a

---

**3.** The parties do not dispute that the plan satisfies the criterion for "bona fide" set forth in *Cipriano v. Board of Education of the City School District of the City of North Tonawanda, New York,* 785 F.2d 51, 54 (2d Cir.1986): the plan must exist and pay "substantial benefits" to employees covered by it. *See also Borden's,* 724 F.2d at 1395 (citing *Marshall v. Hawaiian Telephone Co.,* 575 F.2d 763, 766 (9th Cir.1978)). Also, the severance pay plan was negotiated with the union in connection with the sale of the business in a context not claimed to been less than bona fide.

claim arising out of an intentional subterfuge. Accordingly, the third condition, that the fringe benefit plan not be a subterfuge, is satisfied.

■ The fourth condition is that the severance payment scheme refrain from "requiring or permitting the involuntary retirement" of either Zinn or Gioglio. 29 U.S.C. § 623(f)(2). An employer only induces involuntary retirement when a condition precedent to receiving the benefit is retirement. *See Paolillo v. Dresser Industries, Inc.*, 821 F.2d 81 (2d Cir.1987) and 865 F.2d 37 (2d Cir.1989).[4] For example, one court found that involuntary retirement resulted when a medical leave plan offered older disabled employees no benefits, thereby forcing older disabled employees to participate in a retirement plan so that they could receive disability benefits. *See Betts v. Hamilton County Board of Mental Retardation*, 631 F.Supp. 1198, 1204–05 (S.D. Ohio 1986), aff'd on other grounds, 848 F.2d 692 (6th Cir.1988), rev'd on other grounds *sub nom., Public Employees Retirement System v. Betts,* —— U.S. ——, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989).

The discriminatory severance payment plan, of which plaintiff complains, in no way induced retirement. If anything, the plan would have compelled Zinn and Gioglio not to retire so that they could participate in the plan. Accordingly, the fourth condition is satisfied.

Since all four conditions of Section 4(f)(2) are satisfied, *see Betts*, 109 S.Ct. at 2868, defendant's motions pursuant to Federal Rules of Civil Procedure 12(b) and 56 are granted. Enter Judgment.

IT IS SO ORDERED.

---

**4.** The principles set forth in *Paolillo v. Dresser Industries, Inc., supra,* do not apply to this dispute. The Second Circuit established in *Paolillo* that if an employer offered an early retirement plan in a manner which compelled older employees to retire involuntarily, then a prima facie case for an ADEA violation exists. The complaint in this case does not allege that Chrysler's early retirement offering violated the ADEA. Plaintiff only challenges the severance pay scheme, based on its exclusion of early retirees. The complaint alleges an ADEA violation based upon defendant's "failing to provide severance benefits to terminated employees age 55 or older who were eligible for and received early retirement benefits."