**Frank R. LANGMAN et al., Plaintiffs,**

**v.**

**WESTERN ELECTRIC COMPANY,
Defendant.**

**No. 78 Civ. 5856.**

United States District Court,
S. D. New York.

March 14, 1980.

MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Defendant Western Electric Company has moved to dismiss, or in the alternative for summary judgment in this action brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"); the Vocational Rehabilitation Act, 29 U.S.C. § 793 et seq. and New York Executive Law § 296 et seq. All plaintiffs charge that they were involuntarily retired by Western Electric in violation of the ADEA. Plaintiff Langman additionally charges that he was retired due to a disability in violation of the Rehabilitation Act. According to plaintiffs, the facts leading to the foregoing charges are:

In 1975 Western Electric began a program designed to reduce the number of its employees in New York. As part of this program certain departments were relocated and employees were evaluated in order to determine which employees should be laid off or retired.

When the program began, plaintiffs were all employed as engineers at Western Electric's Corporate Engineering Division in New York City.

In July 1976 plaintiffs were each evaluated "marginal." Langman and Taubenschlag had never previously been rated so poorly. Plaintiff Philactos had been so rated in 1974 when he was asked to retire. However, between 1974 and July, 1976 his performance had been rated "good."

In late October and early November, 1976 plaintiffs were all demoted to Engineering Associates. Langman was also transferred to a different department.

On January 3, 1977, the plaintiffs were each advised that their employment would be terminated effective February 28, 1977. On that date each plaintiff's employment was terminated and each was compelled to accept involuntary retirement. Under Western Electric's pension plan, any employee who has been with the company for thirty years may be retired at the company's discretion. On the date of their retirement, Langman and Philactos were fifty-

eight years of age and Taubenschlag was fifty-seven.

The plaintiffs allege that when Western Electric decided to reduce the number of employees in New York it determined to keep its younger employees, and terminate the older. It is plaintiffs' contention that Western Electric's ratings of their performance, their demotions, and their involuntary retirements were the result of their age rather than any poor performance.

### Administrative Proceedings

On January 3, 1977 Philactos filed a complaint with the U. S. Secretary of Labor. Langman filed his complaint on April 8, 1977 and Taubenschlag filed on June 16, 1977. Each of the three complaints alleged that the grievant had been fired because of his age and that therefore the grievant believed he had been a victim of age discrimination.

On February 11, 1977 Philactos filed a verified complaint with the New York State Division of Human Rights in which he charged Western Electric with age discrimination. Taubenschlag filed a written complaint on October 6, 1977. Langman attempted to file his complaint with the New York State Division of Human Rights on June 21, 1977. However, according to Langman, he was told at the Hauppauge office that since he had already filed with the Department of Labor, it was improper to file with the State of New York.

On November 30, 1978 plaintiffs requested that the Department of Labor confirm their rights to sue under the ADEA. On January 17, 1979 the Department issued such a notice.

According to the affidavit of plaintiff's attorney, David L. Fox, he was notified during a telephone conversation with a representative of the Labor Department that the Department was conducting negotiations but that these efforts had up until that point been unsuccessful.

Western Electric's motion to dismiss or for summary judgment on plaintiffs first and second claims (the ADEA claims) raises the following three questions: (1) Did plaintiffs file a "notice of intent to sue" within three hundred days of the alleged violation? (2) Did plaintiff Langman meet the jurisdictional prerequisite of filing a complaint with the New York State Division of Human Rights before instituting this federal action? (3) Was the discretionary retirement plan under which plaintiffs were retired covered by the § 623(f)(2) exception permitting involuntary retirement?

We resolve all these questions in plaintiffs' favor and therefore deny the motion to dismiss the ADEA claims and the motion for summary judgment.

### I. The Notice of Intent to Sue

At the time of the alleged discrimination the ADEA required that in order for a civil action under the Act to be commenced in a state such as New York, which has an age discrimination law, the Secretary of Labor had to receive notice of intent to sue within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.[1]

Western Electric argues that plaintiffs' complaints should be dismissed because they did not file a notice of intent to sue with the Secretary of Labor within three hundred days of the alleged violation. While defendant's papers seem to suggest that plaintiffs filed no papers at all, plaintiffs have proved to our satisfaction that the papers were in fact filed and that the filing was timely. Although defendant has not clearly so stated, we assume that its argument must be addressed to the form of the notice rather than to its very existence. While the complaints filed with the Secretary were not in fact captioned "notice of

---

1. This provision was amended on April 6, 1978 to read, "No civil action may be asserted by an individual under this section until 60 days after a *charge* alleging unlawful discrimination has been filed with the Secretary." (emphasis added) However, it is clear that the 1978 amendments are not applicable to this case.

intent to sue," we must agree with Judge Dooling's statement that "the filing of a notice of intention to sue is not required as an incantatory formality but for the definite practical purpose of inducing the Secretary to initiate conciliation and to alert him that he should consider whether to sue before the grievant himself sues." *Cowlishaw v. Armstrong Rubber Co.* (1977 E.D.N.Y.) 15 FEP Cases 1108.

There is no question but that the complaints in this case fulfilled the purposes of the statute. The Labor Department reported to plaintiffs that they were holding meetings with Western Electric and attempting to conciliate the plaintiffs' claims. We therefore hold that the complaints filed by plaintiffs with the Department of Labor fulfilled the requirements of 29 U.S.C. § 626(d).

Defendants' reliance upon *Reich v. Dow Badische Co.* (2d Cir. 1978) 17 FEP Cases 363 is misplaced. In that case the plaintiff had been notified by the Department of Labor that his oral communication that "he would sue when he could find a lawyer," *id.* at 366, was not considered a notice of intent to sue by the Department and that he should file a written notice. Plaintiff, however, chose not to so file and the Department never instituted conciliatory efforts with the plaintiff's employer.

## II. The State Division of Human Right's Complaint

Western Electric also argues that plaintiff Langman did not comply with 29 U.S.C. § 633(b) of the Act which requires a grievant to file a complaint with the state (if the state has established an authority to deal with such complaints) at least sixty days prior to instituting a federal suit, and that since compliance with this section is jurisdictional, we must dismiss plaintiff Langman's claim.[2]

2. Section 633(b) provides as follows:
  "In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such

Plaintiff Langman concedes that he did not in fact file a claim with the New York State Division of Human Rights. However, he has submitted an affidavit in which he states that he did attempt to file such a complaint on June 21, 1977. On that date Mr. Langman traveled to the Regional Offices of the State Division of Hauppauge, New York, the offices closest to his home. When he arrived at the office, he explained that he had come for the purpose of filing a complaint alleging age discrimination in connection with the termination of his employment by Western Electric. He was then interviewed by an official who asked him if he had previously filed any other claims. When Mr. Langman informed this official that he had filed a complaint with the Department of Labor, he was told that he could not file a complaint with the Division because he had already filed a federal complaint. At the time of this interview Mr. Langman was not represented by an attorney and he did not question the official's refusal to accept the complaint.

Once again we must reject defendant's position that *Reich v. Dow* is controlling. The plaintiff, in that case, stated that he had made three telephone calls to the Division of Human Rights in August 1973, December 1973, and May 1974, "the results of which were negative and in each case I was discouraged from coming down to file any complaint." *Supra*, at 368. The Second Circuit held that such minimal efforts at even attempting to file a complaint did not satisfy the § 633(b) requirement.

Plaintiff Langman is in an entirely different category. He did not merely make inquiries by telephone, but rather went to the office with the intention of filing a complaint and did in fact attempt to so file. However, he was told in so many words that his complaint would not be accepted.

discriminatory practice, no suit may be brought under Section 7 of this Act before the expiration of sixty days after proceedings have been commenced under the State law, unless proceedings have been earlier terminated . . . ."

684

The Supreme Court has stated recently in *Oscar Mayer & Co. v. Evans* that § 633(b) was intended "only to give state agencies a limited opportunity to settle the grievances of ADEA claimants in a voluntary and localized manner so that the grievants thereafter have no need or desire for independent federal relief. Individuals should not be penalized if States decline, for whatever reason, to take advantage of these opportunities." *Oscar Mayer & Co. v. Evans* (1979) 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609.

We hold that the purposes of § 633(b) were fulfilled when Langman asked to be permitted to file his complaint. The State through its representative at the Division was given its opportunity to settle Mr. Langman's grievance and it declined to take such opportunity. We cannot penalize a grievant because he did not give the State a second chance to exercise its option and we likewise cannot expect a *pro se* grievant to persevere in his efforts to file a complaint when one official has refused to accept it.[3]

Western Electric has also moved for summary judgment with respect to plaintiffs' age discrimination claims, contending that on the date of plaintiffs' retirement, February 29, 1977, involuntary retirement pursuant to a bona fide plan was valid under the Act, specifically under the exception contained in 29 U.S.C. § 623(f)(2) which states that:

"It shall not be unlawful for an employer . . . to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retire-ment, pension, or insurance plan which is not a subterfuge to evade the purposes of the Act . . . ."

Defendant cites *United Airlines, Inc. v. McMann* (1977) 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402, for the proposition that any plan which was established prior to the enactment of the Act cannot be a subterfuge to evade the purposes of the Act and therefore as long as such a plan is bona fide in the sense that it pays substantial benefits, it is valid under 29 U.S.C. § 623(f)(2).

We find that under *McMann*, Western Electric's plan which was established in 1913 and which pays substantial benefits is not a subterfuge and is a bona fide plan.[4] However, we do not find that *McMann* controls this case and therefore deny defendant's motion for summary judgment.

The plan at issue in *McMann* had a mandatory retirement provision requiring all employees to retire at the age of 60 regardless of the employer's wishes in the matter.[5] Thus, the employer had no choice, if it were to "observe" the terms of the benefit plan, but to retire its employees at age 60.

Western Electric's plan, on the other hand, gives the employer the discretion either to retire or continue the employment of an employee who has been with the company for thirty years or more. Thus the plan does not in any sense *direct* Western Electric to retire any employee.

In our view the § 623(f)(2) exception distinguishes between the situation where a plan, such as in *McMann*, mandates or requires the employer to retire an employee and a plan which gives the employer the

3. Since we in effect hold that plaintiff Langman constructively filed his complaint with the State Division on June 21, 1977 within the State statute of limitations, we need not further discuss the Supreme Court's recent ruling that the running of the state statute of limitations will not be a bar to maintenance of a federal action under the Act. *Oscar Mayer v. Evans, supra.*

4. In 1978 the Act was amended and the following language was added to § 623(f)(2):

"and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by Section 631(a) of the title because of the age of such individual."

Plaintiffs have urged us to apply the *Bradley* doctrine to this case and give these amendments retroactive effect. *Bradley v. School Board* (1979) 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476. We decline to do so for the reasons stated by Judge Sand in Marshall v. Atlantic Container Line (S.D.N.Y.1978) 18 FEP Cases 1167.

5. The Court of Appeals' decision made clear that the case did not present the question of whether or not a discretionary plan would be valid under the Act. *McMann v. United Air Lines, Inc.* (4th Cir. 1976) 542 F.2d 217, 219.

choice or option to continue the employment of such employee. In the latter situation the employer is under no compulsion; he need not choose between obeying the law (the ADEA) that states that he may not discriminate on the basis of age, and *observing* (i. e. obeying)[6] the terms of the benefit plan. He may do both by exercising his discretion in the employee's favor. Such an employer is therefore not covered by the exception, and may not exercise his discretion to involuntarily retire an employee solely on the basis of age. We therefore find that the Western Electric plan was not covered under the § 623(f)(2) exception and deny summary judgment on the age discrimination claims. Cf. *Marshall v. American Motors Corporation* (E.D.Mich.1979) 475 F.Supp. 875; *Hannan v. Chrysler Motor Corp.* (E.D.Mich.1978) 443 F.Supp. 802; *Contra,: Conferti v. Western Electric Company, Inc.* (D.C.N.J.1979) No. 77–2051.

■ Defendant Western Electric has also moved to dismiss plaintiff Langman's Rehabilitation Act claim on the ground that this court lacks jurisdiction because Congress did not create a private right of action under 29 U.S.C. § 793. We agree that Section 793 does not create a private right of action for handicapped individuals and therefore dismiss plaintiff Langman's claim.

Section 793(a) provides that any contract in excess of $2500 entered into by any Federal Department or agency for the United States shall require that the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individual.

In Section (b) of the provision Congress has made clear how the requirements of Section (a) may be enforced: if any handicapped individual believes that any contractor has not complied with the provisions of his contract, such individual may file a complaint with the Department of Labor after which the Department shall investigate and take such action as the facts warrant.

Section (b) of 793 makes clear that Congress considered the question, not only of enforcement, but of how an aggrieved handicapped individual could both initiate and participate in that enforcement.

Applying the doctrine of *expresio unius est exclusio alterius,* we conclude that Congress did in fact address itself to the issue of remedies and determined that § 793(b) should be the exclusive method by which aggrieved individuals may proceed.

This conclusion is further supported by a comparison between § 793 and § 794, enacted by Congress on the same day. Section 794, held in this Circuit to create a private right of action in favor of the handicapped, *Kampmeir v. Nyquist* (2d Cir. 1977) 553 F.2d 296, provides that no otherwise qualified handicapped individual shall be concluded from the participation in any program receiving Federal Assistance solely by reason of his handicap. Section 794, unlike § 793, speaks *directly* to the prohibition of discrimination. Likewise, unlike § 793, § 794 does not provide a method by which it may be enforced by aggrieved individuals. We must assume that Congress, having enacted both statutes on the same day, was well aware of what sort of clear anti-discrimination language was necessary to create a private right of action and that it chose to do so in the case of § 794, but not in the case of § 793.

We acknowledge that "even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent" (*National Railroad Passenger Corp. v. National Association of Railroad Passengers* (1974) 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646) and we therefore turn to the legislative history to determine whether or not there is clear contrary evidence.

■ As the Fifth Circuit remarked in its recent examination of whether or not Congress intended to create a private right of action under this statute, the only explicit statements of Congressional intent are

---

**6.** The Random House Dictionary of the English language (1970 Unabridged Edition) gives the following as one of the definitions of "ob-

serve": to obey, comply with or conform to: *to observe all laws* (emphasis in original).

found in connection with later legislation. *Roger v. Frito-Lay, Daily Labor Report* (BNA) 611 F.2d 1074 (5th Cir. 1980). Although such later comments and action may be relied upon to determine the intent of Congress at the time the legislation in question was enacted, "we cannot accord these remarks the weight of contemporary legislative history." *Cannon v. University of Chicago* (1979) 441 U.S. 677, 686, 99 S.Ct. 1946, 1952 n.7, 60 L.Ed.2d 560.

The strongest evidence for plaintiff's argument lies in (1) the enactment of an amendment to the Rehabilitation Act adding a section providing for attorney's fees in any action to enforce a violation of the Act, and (2) comments made in the Senate Conference Committee Report indicating that the committee believed that section 794 created a private right of action and a later comment that section 793 and 794 should be administered in a manner providing that a "consistent, uniform, and effective federal approach to discrimination against handicapped persons would result." Sen.Conf.Rep.No.93 1270. In our view neither of these indications of legislative intent amount to "clear contrary evidence" and we therefore must rely on our construction of the plain words of the statute. *Accord, Roger v. Frito-Lay, supra.* Plaintiff Langman's claim under the Rehabilitation Act is therefore dismissed.

SO ORDERED.