Virginia HANNAN, Plaintiff,

v.

CHRYSLER MOTORS CORPORATION, a Delaware Corporation, Defendant.

Civ. No. 5–71628.

United States District Court, E. D. Michigan, S. D.

Jan. 16, 1978.

Robert L. Hamburger, Rothe, Mazey & Mazey, Detroit, Mich., for plaintiff.

Hira D. Anderson, Jr., Chrysler Corp., Detroit, Mich., for defendant.

## MEMORANDUM OPINION

DeMASCIO, District Judge.

During the greater part of 1974 and continuing into mid-1975, the defendant Chrysler Corporation (Chrysler) experienced a serious economic recession caused by a drastic decline in automobile sales. To assure its economic survival, Chrysler curtailed its manufacturing and assembly operations and, for a period of time, suspended operations entirely to deplete inventories. Simultaneously with this effort, Chrysler management instructed its department heads to reduce by 50 percent its personnel in every facility at all levels. At the time, the plaintiff Virginia Hannan was employed at Chrysler's Detroit Trim Plant, where she worked directly for Mr. Jack Stickley in the personnel department. To comply with the cutback directive Mr. Stickley was required to reduce by 50 percent the number of salaried employees in each department at the Trim Plant. Mr. Stickley testified that department heads evaluated each employee in their department and thereafter selected those employees whom they believed could perform the expanded responsibilities required of a reduced work force. Those employees not selected were separated from employment by layoff or, if eligible, placed on early retirement by mutual agreement or at Chrysler's sole option pursuant to the provisions of the Salaried Employees Pension Plan.

█ The plaintiff was not selected to remain as a part of the reduced work force. The evidence presented at trial, however, supports the conclusion that plaintiff's release from her employment was occasioned by Chrysler's austerity program. We are unable, therefore, to conclude that Chrysler considered age in its decision not to retain plaintiff as a member of the reduced work force created in November, 1974. Conse-

quently, the only possible claim of discrimination that the plaintiff has against Chrysler relates to Chrysler's decision to involuntarily retire plaintiff rather than place her on lay off. Her claim is that age discrimination was involved in the decision to adopt the first of the two alternatives.

The plaintiff testified that Mr. Stickley advised her that all separated employees 55 years of age and over would be compelled to accept retirement. Despite Mr. Stickley's denial that he made that representation, all the evidence supports the conclusion that Chrysler did involuntarily retire across the board all released employees over 55. Chrysler could have produced evidence to establish that some of its employees 55 years of age or older were in fact placed on layoff status rather than involuntary retirement. Such evidence would have been easily accessible from Chrysler's records.

During the trial, Chrysler contended for the first time that plaintiff's involuntary retirement was not based upon age but rather upon Chrysler's decision that plaintiff could not perform the "expanded duties" required of those remaining in the reduced work force. The evidence does not, however, support this contention. We cannot agree that plaintiff was not a capable employee. Chrysler's own employment records reflect that plaintiff performed her duties in a satisfactory manner. *See, e. g.,* Pl. Ex. 14. Additionally, Chrysler rehired the plaintiff after ten previous layoffs indicating that Chrysler believed plaintiff could perform her tasks satisfactorily (Pl. Ex. 3). Chrysler employed plaintiff for 24 years without a whisper that she was incompetent. Therefore, despite Chrysler's assertion that plaintiff's forced retirement was based upon an evaluation made by Mr. Stickley, we find that plaintiff was a satisfactory employee and that her forced retirement was occasioned by Chrysler's policy to retire all employees 55 years and older as part of its austerity program.

Plaintiff alleges that her early forced retirement under these facts violates the

Age Discrimination in Employment Act (ADEA) and the Fourteenth Amendment to the United States Constitution. We have previously held, however, that plaintiff's complaint did not state a claim under the Fourteenth Amendment. Thus, the sole issue presented by the facts as we find them is whether Chrysler violated the ADEA by arbitrarily exercising its option to involuntarily retire all of its employees 55 years of age and over to affect an austerity program. 29 U.S.C. § 623(a)(1) (1970). Chrysler argues that because of the exemption contained in 29 U.S.C. § 623(f)(2) it did not violate the ADEA. That section provides:

> It shall not be unlawful for an employer . . . (2) to *observe* the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan which is not a subterfuge to evade the purposes of this chapter . . . (Emphasis added.)

Chrysler's Salaried Employees' Pension Plan was adopted long before the passage of the ADEA and afforded plaintiff substantial retirement benefits. In this sense, we find that Chrysler's retirement plan was a "bona fide plan" and not a "subterfuge to evade the purposes" of the act. *See Raymond v. Bendix Corporation,* 15 F.E.P. Cases 49 (E.D.Mich.1977); *McKinley v. Bendix Corporation,* 420 F.Supp. 1001, 1003 (W.D.Miss.1976); *Dunlop v. Hawaiian Telephone Company,* 415 F.Supp. 330 (D.Hawaii 1976). The outcome of the sole issue presented here turns upon whether Chrysler could, as an alternative to placing plaintiff in a layoff status, arbitrarily force her to retire pursuant to a bona fide retirement plan.

Chrysler's argument is supported by *Brennan v. Taft Broadcasting Company,* 500 F.2d 212 (5th Cir. 1974), where the court held that a bona fide plan which permitted involuntary retirement at the option of the employer was exempt from the ADEA; and *Zinger v. Blanchette,* 549 F.2d 901, 905 (3d Cir. 1977), where the court held that a forced early retirement under a bona fide retirement plan did not violate the ADEA and further found a distinction between retirement and discharge, holding that a bona fide retirement plan was not something Congress intended to regulate when it enacted the ADEA.

In our view, however, these cases are not persuasive on the facts presented here. Chrysler did more than passively *observe* the terms of its retirement plan in placing this plaintiff on involuntary retirement. The word "observe" denotes a type of passive acquiescence that simply is not present when an employer has an arbitrary and unlimited option to place an employee on involuntary retirement to serve its immediate goals. We cannot assume that Congress chose the word "observe" without reflection. As Circuit Judge Tuttle pointed out in his persuasive dissent in *Brennan v. Taft Broadcasting Company, supra,* the statute does not state that it is not unlawful for the employer to "enforce" or to "carry out" the terms of the retirement plan. Chrysler went far beyond observing the terms of its retirement plan. *See McMann v. United Air Lines,* 542 F.2d 217, 219, note 2 (4th Cir. 1976) (dictum), *rev'd on other grounds* —— U.S. ——, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). Chrysler did not demonstrate that it passively observed the provision of its retirement plan at all times and applied it routinely to all employees, the circumstances presented to the Supreme Court in *McMann.* Therefore the defendant cannot avail itself of the exemption of § 623(f)(2).

Merely because we have found Chrysler's retirement plan a bona fide plan and not a subterfuge to evade the purposes of the Act when it was adopted in 1950 does not mean that Chrysler can never utilize the provisions of that plan in a discriminatory manner proscribed by the Act, once the exemption is inapplicable. In deciding whether to permanently retire plaintiff or place her on a layoff status, Chrysler considered only age. We have already found that plaintiff was advised that Chrysler intended to retire all released employees who were 55 years of age or older. As it developed, all employees who qualified were forced to retire, and those separated employees who did not

qualify, were laid off. This finding is supported by Chrysler's silence notwithstanding plaintiff's testimony. As we have said, Chrysler could have easily produced evidence to demonstrate that some of its employees 55 years of age or older were also laid off. It did not do so. Such a discriminatory application of its retirement plan violated the ADEA. It permitted Chrysler to arbitrarily eliminate all of its older employees and retain employees in a younger age group. Chrysler's older employees, like its younger ones, had the right to a layoff in anticipation of being recalled. Chrysler's arbitrary act made it possible to recall only younger laid-off employees.

■ Chrysler's argument that plaintiff would not have been recalled had she been placed on layoff status is not supported by the evidence. Plaintiff was laid off on ten prior occasions and on several of these occasions, plaintiff was told she would not be recalled (Pl. Ex. 3). We find this evidence most persuasive. Indeed, Mr. Stickley and Mr. Branstner testified that plaintiff would not have been recalled had she been laid off because in addition to being incapable of performing the duties required of a reduced work force, plaintiff was not a very satisfactory employee. We find, however, that plaintiff has carried her burden of establishing that she was a satisfactory employee. The fact that plaintiff was laid off numerous times in the past and called back each time persuades us that her performance was satisfactory, and that she would have been rehired had she been laid off on this occasion. Plaintiff is not required to submit proof to an absolute certainty that her performance was in fact satisfactory or that she would not have been recalled. We have concluded that the plaintiff has satisfied her burden of proof on each of these issues of damages.

Plaintiff's direct evidence on the damage issue, however, is meager and leaves much to be desired. The testimony of plaintiff's actuarial expert was based on the assumption that plaintiff would have continued in the defendant's employ from November 30, 1974. The plaintiff would not accept the fact that her separation in November 1974 whether by layoff or involuntary retirement was inevitable. Hence, plaintiff did not produce evidence to establish when she would have been recalled had she been placed on a layoff. A plaintiff, however, who has shown liability and some damage should not be precluded from recovery merely because she cannot prove with mathematical certainty the exact amount of damage she has suffered. *Anderson v. Mt. Clemens Pottery Company*, 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Thus, we find that had plaintiff been laid off, she would have been recalled after one year and four months, the longest layoff period plaintiff endured during her long tenure as an employee of Chrysler. We have elected to give the defendant the benefit of the doubt as to this issue due to the uncertainty of the date of recall.

In order to compute damages, we further find that had plaintiff been recalled from her layoff she would have continued work until age 62.[1] Moreover, in computing plaintiff's damages, we use the basic wage rate of $218.04 per week, since that is what the plaintiff established by her testimony. Plaintiff, then, is entitled to $218.02 per week from April 1, 1976 until April 1, 1980, equaling $45,348.16. From that amount must be subtracted the amount of retirement benefits plaintiff has received and will receive from December 1, 1974 until April 1, 1980 since she would not have received those amounts had she been laid off and subsequently recalled. That sum equals $31,055.18. Consequently, plaintiff is entitled to an award of $14,292.98. We do not award plaintiff interest on the portion of her salary that she would already have received, nor have we elected to determine actuarily the present value of plaintiff's salary due in the future. We do not believe that the amounts will be significant-

---

1. Plaintiff testified that she planned to work until age 62 and that she would continue to work until the age of 65 if her health remained good. From her testimony, we find that it is very unlikely that plaintiff would have worked past the age of 62.

ly different especially since we have not adjusted actuarily the retirement benefits plaintiff has received. Nor do we believe that the lack of proof on this issue should prevent plaintiff from recovering where it is clear that she has been damaged and the discrepancy as to the exact amount is small. In addition, we do not choose to allow plaintiff any benefits for increased retirement after age 62 due to the additional four years of service. Plaintiff would have to contribute to the plan in order to obtain increased retirement benefits, and we do not deduct those contributions from her wages. Also, plaintiff has not shown the extent of the increase in retirement benefits due to factors other than her own contributions.

Accordingly, plaintiff will have judgment in the amount of $14,292.98.

IT IS SO ORDERED.