# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

v.

# BETHLEHEM STEEL CORPORATION

and

United Steelworkers of America.

Civ. A. No. 88-0175.

United States District Court,
E.D. Pennsylvania.

Jan. 2, 1990.

Spencer H. Lewis, Jr., Philadelphia, Pa., for plaintiff.

Dona S. Kahn, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

INTRODUCTION:

I have before me an unopposed Motion for Summary Judgment of defendant Bethlehem Steel Corporation ("Bethlehem"), a Motion for Voluntary Dismissal Without Prejudice of plaintiff Equal Employment Opportunity Commission ("Plaintiff") with supporting memorandum and Bethlehem's Memorandum in Opposition thereto, and the Memorandum of defendant union, United Steelworkers of America ("The Steelworkers") in support of its unopposed Motion to Intervene as a Defendant.

The Steelworkers' Motion to Intervene was granted by a court order entered December 21, 1989, but I am considering the Memorandum in support of this unopposed Motion to Intervene because it sets forth The Steelworkers' position in support of Bethlehem's Motion for Summary Judgment.

For the reasons given below I will grant the Motion for Summary Judgment and enter judgment in favor of defendants Bethlehem Steel Corporation and The Steelworkers and against Plaintiff. I will deny Plaintiff's Motion for Voluntary Dismissal Without Prejudice.

BACKGROUND:

This case involves policies of defendant Bethlehem regarding the application of pension benefits and severance pay to employees whose jobs are terminated due to reduction in forces. The policies involved affect all classes of employees, both those represented by The Steelworkers and those who are not.

After administrative proceedings, Plaintiff filed this action on January 11, 1988 on

954

behalf of affected employees, alleging Bethlehem's failure to provide the same severance benefits to older employees, regardless of age or pension eligibility, as was given to younger, non pension eligible employees, violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*

Because the parties were engaged in lengthy settlement discussions, the Plaintiff agreed to an extension of time to respond to the Complaint. Bethlehem's Answer was filed on September 26, 1988.

Settlement discussions continued until May, 1989, when Plaintiff and Bethlehem agreed that there was no factual dispute and that cross motions for summary judgment should be filed. The Steelworkers agree that there is no factual dispute and support the granting of summary judgment against Plaintiff. By Order dated May 17, 1989, I ordered that the parties file cross motions for summary judgment by no later than July 16, 1989.

On June 23, 1989, before the motions were filed, the United States Supreme Court handed down its landmark decision in *Public Employees Retirement System v. Betts*, —— U.S. ——, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). This case held that Section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2), "exempt[s] the provision of a bona fide [employee] benefit plan from the purview of the ADEA so long as the plan is not a method of discriminating in other, non fringe-benefit aspects of the employment relationship ..." *Betts*, 109 S.Ct. at 2866. The Justices voted 7 to 2 and the holding is clear. The parties do not dispute that the effect of *Betts* was to eliminate any legal basis Plaintiff may have had in the instant case. The question remains as to what we should do about this.

Because of the decision in *Betts*, on July 12, 1989, I ordered that the parties be allowed an additional ninety days (until October 15, 1989) in which to file their cross motions for summary judgment. This was to permit the parties to analyze the impact of *Betts* on this action. On September 20, 1989, Plaintiff filed a Motion to Stay Proceedings pending the outcome of possible legislation which might reverse or modify the Supreme Court's holding in *Betts*. The Motion was opposed by Bethlehem. Bethlehem filed its Motion for Summary Judgment on October 13, 1989.

On November 13, 1989, at Plaintiff's request, I granted Plaintiff an additional 15 days after my then pending decision on the Motion to Stay Proceedings in which to respond to Bethlehem's Motion for Summary Judgment. I denied the Motion to Stay Proceedings on November 14, 1989, thereby requiring Plaintiff to respond to Bethlehem's Motion for Summary Judgment by November 29, 1989. On December 4, 1989, Plaintiff filed its Motion for Voluntary Dismissal Without Prejudice and stated that this was in lieu of a formal response to Bethlehem's Motion for Summary Judgment. Bethlehem filed a memorandum in opposition to that Motion.

On the same day (December 4, 1989), I vacated my Order of November 13, 1989 which had allowed until November 29, 1989 for Plaintiff's response to the Motion for Summary Judgment, and Ordered that Plaintiff's response to Bethlehem's Motion for Summary Judgment be filed by December 15, 1989. In spite of the Court's Orders and requests, Plaintiff has never filed a memorandum responding to the merits of Bethlehem's Motion for Summary Judgment.

## DISCUSSION

### Plaintiff's Motion for Voluntary Dismissal Without Prejudice

Pursuant to Fed.R.Civ.P. 41(a)(2) an action may be dismissed without prejudice, however, the rule expressly provides that:

> "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper...."

In considering a motion to dismiss, the Court is vested with great discretion. The court must exercise its discretion with due regard to the legitimate interests of both parties. "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." *Andes v. Versant Corp.*, 788 F.2d 1033,

1036 (4th Cir.1986). Such prejudice can include the fact that the motion for voluntary dismissal comes at a late stage in the proceedings, after much time and expense have been invested by the parties. See: *Ferguson v. Eakle*, 492 F.2d 26 (3d Cir. 1974).

 In the instant case, there have been substantial proceedings covering a period of more than four years. The case began with administrative proceedings in 1986 which directly led to the filing of this action in January, 1988. Voluminous records of Bethlehem are involved in this litigation and many of these records were provided to Plaintiff even prior to the formal filing of the lawsuit. Discovery has been taken, there have been substantial legal expenses, and as detailed by Bethlehem in its memorandum in opposition to Plaintiff's Motion for Voluntary Dismissal Without Prejudice, substantial legal expense has been incurred by Bethlehem since *Betts* was decided, even though that decision effectively ended Plaintiff's cause of action.

Prejudice can also, and more importantly, include the possible loss of a substantial right. "The crucial question to be determined is, Would the defendant lose any substantial right by dismissal." *Durham v. Florida East Coast Ry. Co.*, 385 F.2d 366, 366 (5th Cir.1967).

In the instant case, the prejudice to Bethlehem and The Steelworkers is beyond question. For reasons which I will discuss more fully in connection with the Motion for Summary Judgment, as the law stands now, following the *Betts* decision, Bethlehem and The Steelworkers have a clear bar to liability in this action. Plaintiff and Bethlehem agreed in May, 1989, that this matter was factually ripe for summary judgment. The Steelworkers support this position. Bethlehem and The Steelworkers argue that Bethlehem's Motion should be granted notwithstanding Plaintiff's Motion to Dismiss Without Prejudice. There is authority that in such circumstances a motion to dismiss without prejudice should not

be granted. *See Klintworth v. Atlantic Coast Line Railroad Company*, 39 F.R.D. 330 (D.S.C.1966).

The only reason given by Plaintiff for dismissal without prejudice is its speculation that the United States Congress might pass legislation negating the *Betts* decision and take the further step of applying the legislation retroactively to defendants such as Bethlehem and The Steelworkers. There is great uncertainty that such legislative action will ever come, much less come quickly. Even if legislative action does come some day, it is even less certain that the Congress would choose to retroactively apply it to prior situations or to any case pending at the time of the *Betts* decision.[1] How long are we to wait before giving defendants the judgment they are clearly entitled to? 5 years, 50 years? Would not the concept of finality in the American system of justice be rendered meaningless if we are going to delay entering judgment because of future actions that a legislative body might take. We might sooner wait for the end of the world to finally terminate litigation.

We must add that this is not a case which in any way shocks the conscience of the Court. Quite the contrary. To meet the statutory prerequisites, Plaintiff has had to technically characterize the policies involved in this case as ones of discrimination against older workers. Bethlehem and The Steelworkers characterize these policies as being intended to coordinate benefits in an even handed attempt to balance the interests of all classes of workers. Bethlehem has presented, in its Motion for Summary Judgment, an uncontested reasonable factual statement, and in its uncontested Motion to Intervene as a Defendant, The Steelworkers characterize these same policies which affect its union members as the result of honest and fair arm's length collective bargaining. These facts are discussed in greater detail later on in this opinion, but on the basis of them, there is

---

1. Evidence submitted to the Court in connection with Plaintiff's Motion to Stay Proceedings shows that while there was some congressional concern over the impact of *Betts,* the issues involved are exceedingly complex. No legislation has reached the floor of the Congress.

simply no supervening equitable or moral case for granting Plaintiff's Motion.

As pointed out by Bethlehem and The Steelworkers, the policies and agreements involved in this case affect substantial rights of many thousands of employees, as well as many millions of dollars. Any remedy would inevitably affect not only the direct policies involved but, because of the costs involved, the substantial interests of all classes of Bethlehem's employees, including those active, furloughed and retired, the owners and creditors of Bethlehem, and the public at large. Clearly there is much at stake and issues of this magnitude cannot be allowed to hang unsettled on the mere speculation of some future change in the law.

Nothing could be more prejudicial to a defendant than dismissal without prejudice at a time when there is a valid defense, on the speculation that the defense might be lost at some time in the future. Since a lack of substantial prejudice to the defendants, the fundamental condition for a dismissal without prejudice, is so clearly lacking, Plaintiff's Motion for Voluntary Dismissal Without Prejudice must be denied.

### Defendant's Motion for Summary Judgment

The Statement of Claims in Plaintiff's Complaint reads, in its entirety, as follows:

7. Since at least January 1, 1983, and continuously thereafter, Defendant Employer has engaged in unlawful employment practices on a corporate-wide basis in violation of Section 4(a) of the ADEA, 29 U.S.C. Section 623(a), by denying severance pay to retirement-eligible employees because of their age.

8. The effect of the practices complained of above has been to deprive its employees of equal employment opportunities and otherwise adversely affect their status as employees because of age.

9. The unlawful employment practices complained of above were committed willfully within the meaning of the ADEA.

Despite repeated requests, Plaintiff has not filed a memorandum in opposition to the Motion for Summary Judgment or a cross-motion. Plaintiff's Memorandum in Support of Plaintiff's Motion for Voluntary Dismissal Without Prejudice does not dispute the factual statement contained in Bethlehem's Memorandum in Support of its Motion for Summary Judgment. Therefore I will accept as uncontested Bethlehem's factual statement.

At issue in this case are the Bethlehem pension plan policy and the Bethlehem severance policy, two interrelated parts of an over-all employee benefit plan. The history of these policies, which dates back to 1923, shows that they are part of an integrated program designed to provide pension benefits for long term employees and short term economic cushions for shorter term Bethlehem employees who lose their employment as the result of Bethlehem's economic problems in the steel industry and related endeavors.

During the late 1920's, Bethlehem, like other employers in the country, experienced economic difficulties at the onset of the Great Depression which required, for the first time, that Bethlehem terminate large numbers of employees who had not reached retirement age. At least as early as 1929, in order to provide some economic cushion to those employees and their families, Bethlehem provided a severance allowance for those employees. The policy consisted of a one time payment of one week's pay for each year of service. From its outset, the severance allowance policy provided benefits only to those employees who were terminated for reasons beyond their control and who were not entitled to any other benefits from the company as a result of that termination.

In 1960, as a result of arm's length negotiations with The Steelworkers, Bethlehem expanded the availability of pension benefits in the event of an operational or departmental shutdown. Employees who qualified for these "shutdown" pensions were not also eligible for a severance allowance. This integration of these two policies in one overall plan has been consistently applied and existed for decades before the enactment of ADEA. The "shut-

down" pensions do not reflect the employee's otherwise vested pensions, but are early retirement benefits, providing substantial enhancements over the value of the vested pensions to which such employees would otherwise be entitled. Indeed, during the period under study, pension-eligible employees affected by force reduction received over $220 million more, in the form of enhanced pension and ancillary benefits, than if they had received severance pay in combination with their vested pension entitlement.

In 1962, 1968 and 1978, the group of employees who could become eligible for shutdown pensions was expanded. With every increase in the number of employees entitled to a shutdown pension, there was a congruent decrease in the number of people eligible for a severance allowance, since both benefits served the same function: income replacement for employees who became unemployed through no fault of their own.

The rationale underlying all of these offset provisions is that employee benefits (*i.e.,* Railroad Retirement Administration pensions, social security benefits, disability benefits, and severance allowance) are all substantially funded by Bethlehem. Bethlehem, in effect, integrates the various parts of its benefits program so as to provide a total level of income replacement, without generating duplicative payments of "double dipping" from various sources. All of these offsets, as well as the general concept of plan integration, have been approved by the United States Internal Revenue Service pursuant to the requirements of the Employee Retirement Income Security Act of 1974, as amended and its implementing regulations, as well as relevant provisions of the Internal Revenue Code. These offsets are, on their face and in practice, age-neutral. Certainly they do not favor younger employees; nor do they afford them a benefit not given older employees.

The issue before the Court on Bethlehem's Motion for Summary Judgment is straight forward. Is an early shutdown pension given in lieu of a severance allowance violative of the ADEA? The Plaintiff argues that this benefit integration constitutes a violation of Section 4(a)(1) of the ADEA, which provides that:

> It shall be unlawful for an employer ... to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ...

29 U.S.C. § 623(a)(1).

But the ADEA also provides, in Section 4(f)(2), that it is *not* unlawful for an employer:

> To observe the terms of ... any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such ... employee benefit plan shall require or permit the involuntary retirement of any individual ... because of the age of such individual.

29 U.S.C. § 623(f)(2).

In *United Airlines v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), the United States Supreme Court described what a "bona Fide employee benefit plan" under Section 4(f)(2) is. It held that a benefit program was "bona fide" if it existed and paid substantial benefits. No one disputes that the overall Bethlehem plan exists and pays substantial benefits.

On June 23, 1989, the United States Supreme Court issued the decision in *Betts, supra,* a decision which discusses the nature of the bona fide employee benefit plan exemption set forth in Section 4(f)(2). In *Betts,* the Supreme Court noted that a 1978 amendment to the ADEA (an amendment which reversed the holding of *McMann, supra,* regarding mandatory retirement), did not add a definition of the term "subterfuge" or modify the language of Section 4(f)(2) except to insert a final clause forbidding mandatory retirement based on age. *Betts, supra,* 109 S.Ct. at 2860–2861. Therefore the Court concluded that:

As Congress did not amend the relevant statutory language, we see no reason to depart from our holding in *McMann* that the term "subterfuge" is to be given its ordinary meaning, and that as a result an employee benefit plan adopted prior to enactment of the ADEA cannot be a subterfuge.

*Id.*, 109 S.Ct. at 2861. Under the definition in *McMann* and *Betts*, Bethlehem's overall plan is a bona fide employee benefit plan. Unless the overall plan is a subterfuge to evade the ADEA, within the meaning of Section 4(f)(2), the Plaintiff's claim fails.

■ Plaintiff has offered no evidence of a subterfuge in terms of the ordinary meaning of the word. Plaintiff's problems, however, go well beyond a mere lack of evidence, because under *Betts*, any plan adopted before the enactment of the ADEA is not a "subterfuge" under Section 4(f)(2). For that reason, the overall Bethlehem plan, which everyone agrees dates back to the 1920's, cannot be considered a subterfuge.[2]

The *Betts* decision also analyses "the precise meaning of the Section 4(f)(2) exemption in the contest of a post-act plan." *Id.* 109 S.Ct. at 2862. The Supreme Court rejected the view adopted by several lower courts, including the Court of Appeals for the Third Circuit, that, in order not to be a subterfuge to evade the purposes of the ADEA, an employee benefit plan which treats older employees differently must be able to justify such treatment on the basis of age-related costs. *Id.* at 2862–65.

For example, in *EEOC v. Westinghouse Electric Corporation*, 725 F.2d 211, 224 (3d Cir.1983) *cert. denied*, 469 U.S. 820 (1984), the Court of Appeals interpreted the language that "any bona fide employee benefit plan such as a retirement, pension, or insurance plan" in § 4(f)(2) as meaning that any employee benefit plan has to share what the Third Circuit views to be the common characteristic of these enumerated plans, the cost of the benefit generally rises with the age of the beneficiaries. In

*Betts*, the Supreme Court disagreed, noting:

> We conclude that the phrase "any bona fide employee benefit plan such as the retirement, pension, or insurance plan" cannot reasonably be limited to benefit plans in which all age-based reductions in benefits are justified by age-related cost considerations.

*Id.* 109 S.Ct. at 2865.

The Supreme Court also found in *Betts* that the phrase "subterfuge to evade the purposes of" the ADEA referred to the stated purpose of the ADEA, which is to eliminate "arbitrary age discrimination in employment." *Id.* at 2865. Section 4(f)(2), therefore, exempts all bona fide employee benefit plans from the coverage of the ADEA, except those which are used as a subterfuge for age discrimination in other aspects of the employment relationship. *Id.* at 2867. According to *Betts*, Section 4(f)(2) is not an affirmative defense to a charge of age discrimination, but is a "description of the type of employer conduct that is prohibited in the employee benefit plan context." *Id.* at 2868. Holding that the burden is on a plaintiff to prove that a bona fide employee benefit plan was designed with an actual intent to discriminate, the Court wrote:

> By requiring a showing of actual intent to discriminate in those aspects of the employment relationship protected by the provisions of the ADEA, § 4(f)(2) redefines the elements of a plaintiff's prima facie case instead of establishing a defense to what otherwise would be a violation of the Act. Thus, when an employee seeks to challenge a benefit plan provision as a subterfuge to evade the purposes of the Act, the *employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation.*

*Id.* at 2868 (Emphasis added).

Even if the Bethlehem pension and severance policies were not entitled to automatic

---

**2.** We note there have been numerous modifications since the inception of the program. Those made after the effective date of ADEA in 1967 do not change the basic nature of the program. Plaintiff has not argued the existence of a novation and we deem this issue waived.

protection as one overall pre–ADEA plan, the test for subterfuge would require Plaintiff to sustain the burden of proving that integration of the policies actually was intended to serve the purpose of discriminating in some non-fringe benefit aspect of the employment relationship. As already noted, Plaintiff, although given ample opportunity, has produced no such evidence. Quite to the contrary, the policies have the full support of both the employer and the employees' union.

Before closing I find it appropriate to comment on two cases involving similar issues that are presently active in the Third Circuit.

*EEOC v. Westinghouse*, 869 F.2d 696 (3d Cir.1989), reversed and remanded, —— U.S. ——, 110 S.Ct. 37, 107 L.Ed.2d 7 (1989), a leading case, found that policies with some similarities to those of Bethlehem violated ADEA. The Supreme Court in a memorandum opinion reversed and remanded that case to the Third Circuit for further consideration in the light of *Betts, supra.*

In *EEOC v. USX Corporation*, Civil Action No 87–6044 in the Eastern District of Pennsylvania, Judge Van Artsdalen, in the light of *Betts*, opened a previously granted Summary Judgment entered in favor of plaintiff on the issue of liability, and in a ruling from the bench granted Summary Judgment in favor of defendant. That decision has been appealed to the Third Circuit.

To sum up, Plaintiff has not contested the material facts set forth by Bethlehem in its Motion. Plaintiff, in its Motion to Stay Proceedings and its Motion for Voluntary Dismissal Without Prejudice and supporting memoranda, has conceded the impact of *Betts* on its cause of action. Application of the law in the light of *Betts* to the facts set forth by Bethlehem, shows that Bethlehem and The Steelworkers are entitled to summary judgment against Plaintiff on the lawfulness of the severance and pension plan under the ADEA.

At this point, we do not dispute Plaintiff's good intentions in originally filing this suit under the ADEA. However, since then substantial changes in the law coupled with undisputed facts and substantial prejudice to both the Bethlehem Steel Corporation and the United Steelworkers of America leaves us with no choice but to grant the Motion for Summary Judgment. The time has come when finality must be realized and further delay would be both unfair and improper.