**Marion T. GABARCZYK, Plaintiff,**

v.

**BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF POUGHKEEPSIE and Poughkeepsie Public School Teachers Association, Defendants.**

**No. 87 Civ. 0081 (KC).**

United States District Court,
S.D. New York.

May 24, 1990.

Levine & Htoo, Poughkeepsie, N.Y., Gary M. Levine, Susan S. Htoo, for plaintiff.

David S. Shaw, Highland, N.Y., Garrett L. Silveira, Julie R. Seitz, for defendant Bd. of Educ. of the City School Dist. of Poughkeepsie.

Bernard F. Ashe, Gen. Counsel, Albany, N.Y., Ira P. Rubtchinsky, Sr. Counsel, for defendant Poughkeepsie Public School Teachers Ass'n.

## OPINION AND ORDER

CONBOY, District Judge:

Plaintiff Marion T. Gabarczyk brought this action against defendants the Board of Education of the City School District of Poughkeepsie ("the Board") and the Poughkeepsie Public School Teachers Association ("PPSTA"), alleging that defendants discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA" or "Act"), 29 U.S.C. §§ 621 *et seq.* (1976), and that the PPSTA violated its duty of fair representation to her, pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

## BACKGROUND

In June, 1985, at the age of 61 and with 21 years of credited service, Gabarczyk retired from teaching in the City of Poughkeepsie School District ("School District"). While she was employed with the School District, the terms and conditions of her employment and certain retirement benefits were determined by collective bargaining agreements negotiated between the Board and the PPSTA. When Gabarczyk retired, the collective bargaining agreement in effect covered the years from July 1, 1983 to June 30, 1986. Under this agreement, "the 1983–86 agreement," defendants offered an incentive to retire to teachers 55 years of age, with 15 or more years of credited service at retirement. The retirement incentive, set forth in Article XIII of the 1983–86 agreement, provides:

> Section 1. All unit members who during the term of this Agreement will reach the age of fifty-five and have 15 or more years of credited service, upon retirement, shall be entitled to a retirement incentive. of 75% of their last year's salary provided that notice of retirement is given in writing at least six months in advance of the retirement dates provided below.

Plaintiff's Memorandum in Support of Summary Judgment ("Pltf.Mem."), PX 12 at 22–23. Because Gabarczyk was older than 55 and had more than 15 years of service when she retired, she was denied the retirement incentive.

As defendants point out, if Gabarczyk had retired in 1980–81, she would have been eligible to receive the retirement incentive benefit provided in the 1980–83 collective bargaining agreement ("1980–83 agreement"), the first agreement to provide such a benefit. Pursuant to the 1980–83 agreement, "[a]ll unit members who are or will become 55 years of age or older and have or will have 15 years of credited serviced [sic] on or before June 30, 1981, shall be entitled to a retirement incentive of 75% of their last year's salary . . . ." Pltf.Mem., PX 9 at 22. Thus, all teachers who were 55 or older and who had 15 or more years of credited service had a one-time opportunity to receive the retirement incentive, provided they retired by June 30, 1981. This "window of opportunity" was eliminated from the 1983–86 agreement; otherwise, little incentive to retire early would have been presented to teachers, as the incentive would effectively have become a retirement bonus.

Gabarczyk initially elected to retire in 1981, and receive the retirement incentive payment under the 1980–81 agreement. Memorandum of Law in Support of Defendant, Board of Education of the City School District of Poughkeepsie's Cross–Motion for Summary Judgment ("Board Mem."), DX B. However, by letter dated January 14, 1981, Gabarczyk withdrew her resignation. *Id.*, DX C. At the time, Gabarczyk was informed by James B. Clarke, Jr., then Associate Superintendent of the Board, that she would no longer be eligible for the 1980–83 retirement incentive, although it is not clear whether she was told she would be ineligible for all future retirement incentives. Deposition of Marion T. Gabarczyk, taken on September 7, 1988 ("Gabarczyk Dep.") at 91–93. When Gabarczyk retired in 1985, and sought to receive the incentive payment under the 1983–86 agreement, Clarke informed her, by letter dated January 31, 1985, that she was "not entitled to the retirement incentive" because

> The only time the window was open for employees over 55 years of age and with more than 15 years of credited service to receive the retirement incentive was at its inception with retirement no later than June 1981. You will remember that you had decided to retire at that time and then withdrew your notice of retirement on January 14, 1981.

Board Mem., DX F.

Because she was denied the retirement incentive benefit under the 1983–86 agreement, Gabarczyk contends that, in negotiating and implementing the retirement incentive, the defendants discriminated against her based on age, in violation of Section 4(a) of the ADEA, 29 U.S.C. § 623(a). Under Section 4(a)(1) of the ADEA, it is unlawful for an employer "to fail or refuse to hire or discharge any individual or other-

wise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Gabarczyk also contends that the PPSTA violated its duty, pursuant to Section 301 of the LMRA, to represent her fairly, both in negotiating the terms of the 1983–86 agreement, and in pursuing her grievance against the Board.

Defendants respond that the retirement incentive benefit is protected under Section 4(f)(2) of the ADEA, which provides that it is not unlawful for an employer

> to observe the terms of ... any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such ... employee benefit plan shall require or permit the involuntary retirement of any individual ... because of the age of such individual.

29 U.S.C. § 623(f)(2). Defendants also contend that Gabarczyk's cause of action is barred by the statute of limitations, arguing that Gabarczyk's claim accrued when she was assertedly informed, in 1981, that she would no longer be eligible for any future retirement incentive benefits. In addition, the PPSTA claims that it did not breach its duty of fair representation, either in negotiating the 1983–86 agreement or in representing Gabarczyk's grievance. In the alternative, the PPSTA argues that, because monetary damages against the PPSTA are not available to Gabarczyk under the ADEA, Gabarczyk's claims against the PPSTA should be dismissed, at least to the extent that Gabarczyk seeks monetary damages from the PPSTA.

Both sides have moved for summary judgment. While these motions were *sub judice*, the Supreme Court handed down its decision in *Public Employees Retirement System of Ohio v. Betts*, —— U.S. ——, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). We directed the parties to submit supplemental briefs on the impact of *Betts* on this action. As part of her response, Gabarczyk moved

to hold the matter in abeyance pending the outcome of Congressional action in response to *Betts*. For the reasons stated below, we decline to hold the matter in abeyance, and grant summary judgment in favor of the defendants.

## DISCUSSION

### I. *Motion to Hold the Matter in Abeyance*

■ Pointing out that legislation has been introduced in Congress to overturn *Betts*, Gabarczyk suggests that we hold this action in abeyance, pending the outcome of legislative action. As far as we are aware, no legislation has reached the floor of Congress. Moreover, the issues involved are exceedingly complex, making it impossible to predict the outcome of Congressional action. "Even if legislative action does come some day, it is even less certain that the Congress would choose to retroactively apply it to prior situations or to any case pending at the time of the *Betts* decision." *EEOC v. Bethlehem Steel Corp.*, 727 F.Supp. 952, 955 (E.D.Pa.1990) (footnote omitted). As one judge has asked,

> How long are we to wait before giving the defendants the judgment they are clearly entitled to? 5 years, 50 years? Would not the concept of finality in the American system of justice be rendered meaningless if we are going to delay entering judgment because of future actions that a legislative body might take. We might sooner wait for the end of the world to finally terminate litigation.

*Id.* In light of the uncertainty of the nature and timing of Congressional action, we decline to hold this action in abeyance. *See Warren v. Oil, Chemical and Atomic Workers, Union—Industry Pension Fund*, 729 F.Supp. 563 (E.D.Mich.1989) (declining to hold matter in abeyance pending outcome of legislative effort to overturn *Betts* ).

### II. *Motion to Dismiss for Lack of Timeliness*

■ Defendants argue that Gabarczyk's suit is barred by the statute of limitations. Section 7(e)(1) of the ADEA, 29 U.S.C.

§ 626(e)(1), explicitly adopts the statute of limitation provisions of the Portal-to-Portal Act, 29 U.S.C. § 255(a) (1982). Thus, assuming that a claim has been timely filed with the Equal Employment Opportunity Commission (EEOC), an action for non-willful discrimination must be brought within two years of the alleged discriminatory act, and for willful discrimination, within three years of the act. The Board and the PPSTA argue that, because Gabarczyk knew of her inability to receive retirement incentive benefits in January of 1981, she had to file her complaint by January of 1984. Since she filed her complaint on December 18, 1986, defendants argue that Gabarczyk's complaint is time-barred.

We disagree. As Gabarczyk contends, her claim did not accrue until June 30, 1985, when she was denied the retirement incentive benefit under the 1983–86 agreement. Gabarczyk did not necessarily know, in 1981, of her ineligibility for the benefit plan under the 1983–86 agreement; she may have assumed that she was simply disqualified under the 1980–83 agreement. Moreover, whether or not defendants provided all teachers 55 or over, with 15 or more years of service, a "window of opportunity" under the 1980–83 agreement within which to retire and receive the benefit is "not material to our decision" because Gabarczyk's "claim is not that [she was] denied the opportunity ever to participate in the incentive, but that [she was] denied the opportunity to do so on the date [she] ultimately chose to retire." *Cipriano v. Board of Educ. of the City School Dist. of the City of North Tonawanda*, 785 F.2d 51, 52, n. 2 (2d Cir.1986) (Friendly, J.). Accordingly, we focus on defendants' denial of the incentive to Gabarczyk under the 1983–86 agreement. Because Gabarczyk challenged the defendants' denial of the retirement incentive by filing suit on December 18, 1986, well within two years from the date of the alleged violation of the ADEA on June 30, 1985, her complaint was timely filed.

III. *Cross–Motions for Summary Judgment*

As noted earlier, defendants argue that the retirement incentive plan in the 1983–86 agreement is exempt from scrutiny under the ADEA because it falls within Section 4(f)(2)'s exception for a "bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of" the ADEA. 29 U.S.C. § 623(f). Prior to the Supreme Court's decision in *Betts*, the employer had the burden of proving, as an affirmative defense to an age discrimination claim, that the incentive plan was a bona fide employee benefit plan, and not a subterfuge to evade the purposes of the Act. *See, e.g., Cipriano*, 785 F.2d at 57 (quoting *EEOC v. Home Ins. Co.*, 672 F.2d 252, 257 (2d Cir.1982)). However, in *Betts*, the Court held that the burden falls on the employee to establish, as part of its prima facie case, "subterfuge to evade the purposes of" the ADEA. *Betts*, 109 S.Ct. at 2868. Defendants move for summary judgment, on the ground that Gabarczyk has not met her "burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation." *Id.*

It is undeniable that the retirement incentive benefit in the 1983–86 agreement does not discriminate in "some nonfringe-benefit aspect" of the employment relation, such as "hiring and firing, wages and salaries, and other nonfringe-benefit terms and conditions of employment." *Id.* at 2866. As the Supreme Court explained in *Betts*, "Congress intended to exempt employee benefit plans from the coverage of the Act except to the extent plans were used as a subterfuge for age discrimination in other aspects of the employment relation." *Id.* at 2867. Thus, unless the employee benefit plan has the purpose and effect of retaliating against employees who have filed age discrimination claims, or of discriminating among employees in terms of salaries, hiring practices, or other nonfringe-benefit areas, a bona fide retirement plan which makes age-based distinctions does not violate the ADEA. *See Robinson v. County of Fresno*, 882 F.2d 444, 447 (9th Cir.1989)

(upholding dismissal of ADEA claim because plaintiff had not shown that "change in benefits formula demonstrates an intent to discriminate in any nonfringe-benefits area").

Nevertheless, Gabarczyk argues that the defendants cannot benefit from the Section 4(f)(2) exception because defendants were not (1) acting in observance of (2) a bona fide employee benefit plan. *See EEOC v. Home Ins. Co.,* 672 F.2d at 257 (listing elements of Section 4(f)(2) exception); *EEOC v. Chrysler Corp.,* 729 F.Supp. 1002, 1007 (S.D.N.Y.1990) (same). Neither of these arguments is persuasive.

First, Gabarczyk contends that defendants did not observe the terms of the 1983–86 agreement because defendants assertedly granted the retirement incentive benefit to several other teachers who should have been ineligible. The fact that defendants may have granted the incentive to one teacher improperly, however, is not relevant or material here, because defendants applied the terms of the 1983–86 agreement with respect to Gabarczyk, who under no interpretation of the agreement was eligible for the retirement incentive benefit. The issue before us is whether the defendants observed the terms of the retirement incentive plan with respect to Gabarczyk, not to other teachers. The cases cited by Gabarczyk are not to the contrary. *See Sexton v. Beatrice Foods Co.,* 630 F.2d 478 (7th Cir.1980) (focussing on defendant's actions with respect to plaintiff to determine whether defendant observed terms of pension plan); *Hannan v. Chrysler Motors Corp.,* 443 F.Supp. 802 (E.D.Mich.1978) (same).[1] Because the defendants' action in denying Gabarczyk the

retirement incentive payment was obviously "taken in observance of [the 1983–86 agreement's] terms," *EEOC v. Home Ins. Co.,* 672 F.2d at 257, as required by Section 4(f)(2), we find that defendants were observing the terms of the 1983–86 agreement.

Even if defendants' actions with respect to other teachers were relevant, the facts upon which Gabarczyk relies do not raise an issue of fact precluding summary judgment. In her papers, Gabarczyk identifies four teachers who she asserts were given the benefit in circumstances similar to hers. She points to one teacher who allegedly received the benefit although she retired at age 62 with 31 years of service. Pltf.Mem. at 17. As defendants explain, this teacher should not have been identified as receiving the benefit, as she never received it. *See* Affidavit of Joan Brandow, sworn to on November 14, 1988, ¶¶ 4–6. Gabarczyk also names two teachers who received the retirement incentive at age 56, with 19 and 21 years of service, respectively, and one teacher who received it at age 57 with 16 years of service. Pltf.Mem. at 17. According to Gabarczyk, these teachers were only eligible for the retirement incentive in the year before they retired, because, by the express terms of the 1983–86 agreement, "[n]o teacher over the age of fifty-five in any given school year shall be eligible for the Retirement Incentive except for the school year during which such teacher achieves the fifteenth year of credited service." *Id.,* PX 12 at 23, § 4.

The two 56 year-old teachers, however, were eligible for the retirement incentive because they reached the age of 55, al-

---

1. In *Hannan,* the defendant, Chrysler Motors, reduced its work force and, pursuant to the provisions of a salaried employees pension plan which allowed Chrysler to select arbitrarily employees for early retirement, compelled all employees 55 years of age and over, including the plaintiff, to accept retirement, rather than temporary layoff. 443 F.Supp. at 803. In contrast, defendants here did not arbitrarily or discriminatorily deny anyone, including Gabarczyk, the benefit; they only inadvertently granted (assuming the grant was improper) the benefit to one apparently ineligible teacher, as discussed in the text immediately following.

Moreover, the district court's reasoning in *Hannan* has been called into question. As the district court noted in *Slusher v. Hercules, Inc.,* 532 F.Supp. 753 (W.D.Va.1982), before Section 4(f) was amended to exclude mandatory retirement from its coverage, if an employer's action in involuntarily retiring an employee was pursuant to the terms of its plan, which was bona fide and not a subterfuge, then the employer did not violate the ADEA, despite the discretion afforded the employer. *Id.* at 762 (citations omitted). Thus, *Hannan* is of limited, if any, precedential value.

ready having 15 or more years of credited service, "during the term of [the] Agreement," Pltf.Mem., PX 12 at 22, § 1. Although it appears that the third teacher received the benefit improperly, in the year after she was apparently eligible for it, the records before us suggest that this was an administrative aberration. Indeed, of the teachers who received the retirement incentive under the 1983–86 agreement, see Pltf. Mem., PX 23, Gabarczyk is only able to point to one teacher who assertedly received the benefit improperly. All other ineligible teachers, including Gabarczyk, were denied the benefit. That defendants may have improperly granted the benefit to one teacher, while denying it to Gabarczyk and all others who were ineligible, does not suggest that the defendants did not "observe" the terms of the 1983–86 agreement, within the meaning of Section 4(f)(2). Nor does it preclude summary judgment, for no reasonable jury could find, based on what was in all likelihood a single administrative error, that defendants did not observe the terms of the agreement. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Second, Gabarczyk argues that the retirement incentive benefit is not a bona fide employee benefit plan, relying on *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In *Fort Halifax*, the Court, interpreting the Employee Retirement Income Security Act (ERISA), held that "ERISA's preemption provision [29 U.S.C. § 1144(a)] does not refer to state laws relating to 'employee benefits,' but to 'employee benefit *plans*.'" 107 S.Ct. at 2215 (emphasis in original). Gabarczyk urges us to adopt this distinction between plans and benefits, so that the retirement incentive payment does not qualify as a "plan."

The definition of "employee benefit plan" in *Fort Halifax* is derived from the legislative intent behind ERISA:

Congress intended preemption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.

*Id.* at 2217. Accordingly, the Supreme Court held that a one-time severance payment provision is not an "employee benefit plan" for ERISA purposes. *Id.* at 2220. As one judge in this district has observed, "*Fort Halifax's* holding that Congress did not intend to have ERISA preempt local regulation of severance payments, does not necessarily mean that Congress did intend to have ADEA regulate severance payments." *EEOC v. Chrysler*, 729 F.Supp. at 1008 (Patterson, J.). Similarly, the definition of an employee benefit plan under ERISA is not necessarily applicable to whether the ADEA applies to one-time retirement incentive payments under a collective bargaining agreement, such as the one in question here. "Whether a payment scheme constitutes an ERISA plan is premised upon concerns for administrative integrity and uniform administrative procedures. Those concerns are irrelevant to ADEA, enacted seven years before ERISA. *See Betts*, 109 S.Ct. at 2866 (Congress did not address issues concerning regulation of employee benefits in ADEA at all)." *Id.* Accordingly, the definition of "employee benefit plan" applicable to ERISA is not binding here.

In any event, the retirement incentive payment at issue here is part of the Poughkeepsie School District's overall retirement plan. Unlike the fringe benefits at issue in *Alford v. City of Lubbock*, 664 F.2d 1263 (5th Cir.), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982), *EEOC v. Westinghouse Elec. Corp.*, 725 F.2d 211 (3d Cir.1983), and *EEOC v. Borden's Inc.*, 724 F.2d 1390 (9th Cir.1984), the cases upon which Gabarczyk relies, the retirement incentive here is functionally connected to a retirement plan, the New York State Teachers' Retirement System. Indeed, the retirement incentive benefit under the 1983–86 agreement is similar to the fringe benefit plan at issue in *Cipriano*, 785 F.2d at 52. In that case, distinguishing *Alford*, *Westinghouse*, and *Borden's*, Judge

Friendly determined that the defendants' retirement incentive plan, which was also a supplement to the New York State Teachers' Retirement System, qualified as an employee benefit plan. *Id.* at 55. Here, as in *Cipriano*, "[b]ecause the special incentive simply increases [the] compensation [to older employees for leaving the workforce] and, like benefits available under the underlying retirement plan, is a quid pro quo for leaving the workforce after a certain age and number of years of service, it must be viewed functionally as part of that plan." *Id.* at 56. Accordingly, we find that the retirement incentive benefit is a bona fide employee benefit plan.[2] Because, as we have determined, see *supra* at page 122, the plan is not a subterfuge to evade the purposes of the ADEA, the plan qualifies for the Section 4(f)(2) exemption, and the defendants are entitled to summary judgment on Gabarczyk's discrimination claims.[3]

Finally, the PPSTA moves for summary judgment on Gabarczyk's claims of violations of the duty of fair representation. Rather than addressing the PPSTA's legal arguments and factual assertions in support of this motion, Gabarczyk simply states that "defendant Union's argument that it is entitled to summary judgment on plaintiff's claim of the breach of fair representation must ... fail [because] [r]esolution of this claim is intricately tied to plaintiff's ADEA claim." Plaintiff's Reply and Opposition to Defendants' Cross–Motions for Summary Judgment ("Pltf. Reply Mem.") at 25. We agree, to the extent that Gabarczyk's claim against the PPSTA for violation of the duty of fair representation falls along with her claims against the PPSTA of age discrimination. Because the PPSTA is not liable to Gabarczyk under the ADEA for age discrimination, the PPSTA did not violate any duty to Gabarczyk to represent her, either in negotiating the agreement or in pursuing Gabarczyk's claims of age discrimination. In any event, Gabarczyk does not dispute any facts or address any arguments set forth by the PPSTA in support of its motion for summary judgment on the fair representation claims. Accordingly, the PPSTA is entitled to summary judgment on these claims.[4]

## CONCLUSION

Gabarczyk's motion to hold this action in abeyance is denied. Defendants' motions for summary judgment are granted, and the complaint is dismissed. The Clerk of the Court is directed to enter judgment in accordance with this Order.

SO ORDERED.

---

**2.** The parties do not dispute that the plan satisfies the criterion for "bona fide" set forth in *Cipriano,* 785 F.2d at 54, that is, that the plan must exist and pay substantial benefits to employees covered by it.

**3.** Because we find that defendants are protected by Section 4(f)(2), we need not address the PPSTA's claim that Gabarczyk may not recover monetary damages from the PPSTA, although the PPSTA is correct. Under the ADEA, monetary damages, including liquidated damages and back pay, are not recoverable against a labor union. *Air Line Pilots Ass'n, Int'l v. Trans World Airlines, Inc.,* 713 F.2d 940, 957 (2d Cir.1983), *aff'd in part, rev'd in part on other grounds, sub nom. Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

**4.** Even if Gabarczyk provided factual and legal support for her claims against the PPSTA, it does not appear that she would be entitled to any relief from the PPSTA. According to Gabarczyk, she would be entitled to an award of backpay, and "an award of attorneys' fees and costs, and appropriate injunctive relief banning the continued use of the discriminatory incentive provision." Pltf.Reply Mem. at 24. As we have observed, an award of backpay against the PPSTA is not available to Gabarczyk. See *supra,* footnote 3. In addition, Gabarczyk did not ask for injunctive relief in her complaint; nor would she be entitled to any, as the defendants have not violated the ADEA. Finally, Gabarczyk does not cite any statutes or cases in support of her claim for attorneys' fees and costs.